## Cɪᴛʏ ᴏꜰ Jᴀᴄᴋꜱᴏɴ ᴠ. Jᴀᴍᴇꜱ R. Pʀᴇꜱᴛᴏɴ.

### [47 South. 547.]

ᵀᴀxᴀᴛɪᴏɴ. *Exemption.* *Code* 1906, § 4251 (*d*). *Colleges.*

> Property used directly and exclusively for the purposes of a college, or institution for the education of youth, is exempt from taxation under code 1906, § 4251 (*d*), specifying what property is so exempt, although the legal title thereto be in the president of the institution.

Fʀᴏᴍ the circuit court of, first district, Hinds county.

Hᴏɴ. Wɪʟᴇʏ H. Pᴏᴛᴛᴇʀ, Judge.

Preston, appellee, was plaintiff in the court below; the city of Jackson, appellant, was defendant there. The plaintiff sought to recover from the city money which he had paid it under protest as municipal taxes for the year 1907. From a judgment in plaintiff's favor defendant appealed to the supreme court. The facts are stated in the opinion of the court. The section of Code 1906 involved, so far as relates to the subject matter of the suit is as follows:—

"4251 (3744). *What property exempt.* The following property, and no other, shall be exempt from taxation, to-wit:—

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

(d) All property, real or personal, belonging to any religious or charitable society, and used exclusively for the purpose of such society and not for profit. All property, real or personal, belonging to any college or institution for the education of youth, used directly and exclusively for such purpose."

It will be remembered that by Code 1906, § 3317, municipalities are empowered to levy *ad valorem* taxes only on property within their limits subject to state and county taxes, and that all property exempted from state and county taxes, is exempt from municipal taxation as well.

*McWillie v. Thompson,* for appellant.

The declaration not only fails to show that the property on which the taxes were paid *belonged* to a college or institution for the education of youth, but negatives the fact by showing that it belongs to Preston.

Two things are absolutely essential to an exemption under the statute: (1) The property must be property "belonging to" a college or institution for the education of youth, and (2) it must be used directly and exclusively for an educational purpose.

Neither of these two essentials without the other can support the exemption; the withdrawal or nonexistence of either causes the claim of an exemption to collapse. It surely does not need the citation of authority to prove the position taken.

It will be claimed by appellee that the legislature undertook to create the exemption by its amendment of Code 1892, § 3744 par. (d), and therefore he is entitled to maintain this suit.

The Code 1892, § 3744 par. (d) exempted "All property, real or personal, belonging to any * * * *incorporated* institution for the education of youth, used exclusively for the purposes of such * * , and not for profit."

The amendment made consisted of (1) striking out the word "incorporated" and inserting the words "college or" before the word "institution" and (2) omitting the words "and not for profit" from the end of the sentence.

After as well as before the amendment the property must be property belonging to the educational institution and must have been used exclusively for educational purposes. Before the amendment the institution must have been an incorporated one, since then it need not be incorporated; it can be a joint stock company, a religious denomination, or other association of persons capable of owning property, real or personal, or of being the beneficiaries for whom property can be held in trust by another. Before the amendment the use need not have been direct, but since then the property must be used "directly" as well

as exclusively by the educational institution. Before the amendment if the property was used for profit it was not exempt; since then if it belonged to the educational institution and be used directly and exclusively for educational purposes it makes no difference that the use is for profit. These are the only effects of the amendment.

The court below struck from the paragraph as found in the Code of 1892 the words "belonging to" when the legislature in passing the Code of 1906 had expressly left them there, under circumstances persuasive of deliberate intent. The legislature had the matter of amending the statute and enlarging the exemption in mind and in its wisdom held on to the words "belonging to" as limiting the property to be exempted and yet, appellee appeals to the court to strike them out.

The exemption claimed is sought to be rested upon but one leg, the use of the property, while the law looks to the ownership and use, the ownership no less than the use.

Take the case before the court: Preston owns the property, he may sell it tomorrow and defeat the object of the exemption; his creditors may levy upon it under execution or attachment and sell it away from the purposes to which at present it is devoted to the destruction of the object of the exemption. This will not do; the legislature was unwilling to exempt property unless it were devoted to educational purposes beyond the whim or power of any one man, or the creditors of any one man to revoke the dedication. It is no answer to this to say that if it belonged to the college it could be sold by the college, or the creditors of the college, because the probability of an educational institution selling its property used for educational purposes or suffering it to be sold under execution is quite remote.

For whose benefit was the exemption under consideration intended? Manifestly for the college or institution for the education of youth, and not for the benefit of any person whose property might be used "directly and exclusively" for college purposes. Whose use of the property is referred to in the

statute? Manifestly the owner's use, otherwise we might have this case: An owner would lease his property for a large rental to an educational institution and be able to claim the exemption for his benefit by showing that it was used "directly and exclusively" by the institution, his tenant. This would not do, was never intended.

Our position is strengthened by a consideration of other parts of the section. Look at par. (a); under it the ownership of land constituting a cemetery is unimportant; under par. (e) ownership is not made prominent to say the least; while under par. (f) it is wholly without significance; the exemption depends alone under paragraphs (a) and (f) upon the use to which the property is devoted. The legislature knew how to grant an exemption when property was used for certain purposes and it knew how to grant the exemption with reference to use and ownership jointly. Knowing how, it granted the exemption claimed only when the property belonged to a college or institution for the education of youth and was used directly and exclusively for its purposes.

*L. Brame,* for appellee.

Under the Code of 1892, § 3744, the provision in reference to exemptions of this character was as follows: "All property, real or personal, belonging to any religious or charitable society, or incorporated institution for the education of youth, used exclusively for the purpose of such society or institution, and not for profit."

In the Code of 1906, § 4251 (d), a very material change was made, the language being as follows:

"All property, real or personal, belonging to any college or institution for the education of youth, used directly and exclusively for such purpose."

It will be seen that the requirement for incorporations was expressly omitted and the words "and not for profit" stricken out. The evident purpose of this change was to broaden the

statute in the interest of education, and this was consistent with a wise public policy. We must attribute some purpose to the legislature in making this change. It was well-known that a number of prominent educational institutions in the state were owned by individuals. There was no reason for making a distinction between incorporated institutions and those that were not incorporated. The manifest purpose of the legislature in making the change was to foster and encourage education throughout the state by placing all educational institutions on the same footing as to taxation.

In this connection, we also call attention to Code 1892, § 3994, which provided as follows: "In districts containing not more than one chartered institution of learning, the board shall locate the public school, if it be so desired by the authorities of the chartered institution, with the consent of the trustees of the chartered institution, at the site thereof;" etc. This language is carried forward literally in Code 1906, § 4513. Therefore the legislature in Code 1906, § 4251 omitted the provision as to an incorporated or chartered institution, but in the section last quoted, Code 1906, § 3994, re-enacted the law, expressly providing for an incorporated institution.

As stated before, this action of the legislature in striking out the word "incorporated" is significant. It is a cardinal rule of construction that some purpose must be attributed to the legislature when in amending or re-enacting a statute it leaves out a word or clause and especially one so broad and comprehensive as the word omitted in this instance. This is especially true where the effect of a change is in the interest of the well known public policy of the state.

"A new enactment is to be interpreted 'in the light of the general policy of previous legislation and of the long established principles of law and equity,' and 'there is a presumption that by the new enactment the legislature intended some progress along the line, and did not intend any reversal, of such established policy and principles.' *Haggett v. Hurley,* 91 Me. 547."

We conclude therefore that in enacting the law of 1906, it was in effect expressly provided that property in private ownership, if devoted directly and exclusively to the education of youth, shall be exempt from taxation. And why not? Why should the land, buildings and equipment of an incorporated institution be exempt, while those owned by individuals should be burdened with taxes?

The legislature by this change declared that the character of ownership whether corporate or individual was immaterial, while the use of property was the all important consideration. While striking out the word incorporated, thereby broadening the statute as to the character of ownership, the word "directly," which is not in the Code of 1892, was inserted in the new law so as to require that property to be exempt should, be "used directly and exclusively" for the education of youth. Thus we see that one feature of the statute was broadened and the other, that in relation to the use of the property, was made more strict. In this view, the new statute is to be construed.

In the brief of opposing counsel it is said that the omission of the word incorporated "no doubt enlarged to some extent the number of colleges and institutions of learning which could claim the exemption."

This is undoubtedly true. Such was not only the effect, but the purpose which actuated the legislature in broadening the exemption.

Counsel now concede that colleges or institutions of learning need not be incorporated in order to avail of the exemption, but, sticking in the bark, they seize upon the word "belonging" and say that it indicates ownership, and then they attempt to add to the language of the legislature by making the statute read that the property must belong to a "joint stock company, a religious denomination or other association of persons capable of owning property, real or personal." By this interpretation, counsel would have the court to read into the statute the words here

quoted.  This would be violative of the most elementary and cardinal rule of construction which forbids judicial interpolation of words in a statute and at the same time it would hinder and defeat in a large measure the broad public policy in favor of education which the legislature manifestly had in view in amending the statute.

We were taught by Blackstone that there are only two kinds of persons, natural and artificial.  The natural person is an individual, and the artificial person is a corporation.  Counsel are in this court driven to the concession that the plain language of the statute under consideration does not require that property to be exempt must be owned by an artificial person. Therefore it necessarily follows that it may be owned by a natural person or persons, that is an individual.

We come down now to the word "belonging" upon which counsel lay so much stress.  Singling out this word, they claim that it signifies ownership and has no other signification or meaning.  Giving this sole meaning to the word, counsel would have the court distort the entire paragraph and defeat the plain purpose of the statute, which manifestly and indisputably was to extend exemption from taxation to every college or institution in the state, if the property and equipment of the college or institution is devoted exclusively to education.

Language is imperfect.  It is but the vehicle of thought. Tallyrand said its purpose was to conceal thought. Whether this is true or not, we know a word often means one thing in one connection and possibly the actual reverse in another connection. There is the language of science and of art and of history, ancient and modern; the language of the Holy Scriptures about which learned men so radically differ; the language of the street the language of the police court where a pistol is a gun; the language of baseball, with its bunts and bingles and other terms that none but a professional can understand.  Then we have the language of poetry and it is said we have a language of flowers,

and of music. The poet Moore in one of his Irish melodies, paying a beautiful tribute to music, said:

>"Language fades before thy spell,
>  Why should feeling ever speak
>When thou canst breathe her soul so well?"

All this goes to prove what we know so well to be true, that words are purely conventional and that there is no definite fixed interpretation to be placed upon them, even in what is known as the exact sciences. Keeping this in view and knowing that the letter killeth and the spirit giveth life, the courts have always refused to consider mere words and have even sought to get at the true intent and meaning of a statute, ofttimes attributing to a word what might otherwise be its secondary or remote significance.

Courts will depart from a literal interpretation of the statute and give the language a broader or more restricted meaning than its mere words would import in order to effectuate the evident purpose of the law. *Board of Education v. Railroad Co.,* 72 Miss. 236, 16 South. 489.

A construction contrary to the letter of a statute will be adopted, if such be the plain intention. *Eskridge v. McGruder,* 45 Miss. 294; *Bonds v. Greer,* 56 Miss. 710; *Leachman v. Musgrove,* 45 Miss. 511.

Belonging to does not necessarily and not always primarily imply ownership. If we say a certain island in the Mississippi River belongs to Mississippi, this does not necessarily or even in ordinary parlance mean that the state owns the island, for it is the property of an individual. If we say that certain cattle belong to the Agricultural & Mechanical College, it is not meant that the college owns the cattle, for the property is that of the state. If we say that Saul belonged to Tarsus, it would not mean that the man who became the great apostle to the Gentiles, and who was born a Roman citizen, was a slave.

"Belong," as defined by the Century Dictionary: 1. "To go along with anything, or accompanying it as an adjunct or at-

tribute, pertain (to); appertain (to); be a property (of); be in the power or at the disposal (of)."

Even if the primary meaning in a general use of the word did imply ownership, such a meaning would not be given to it in the statute under consideration, for, as we have seen, this would lead to absurd and unjust results and would defeat the very purpose of the amendment which was to put all schools in the state on the same footing.

Argued orally by *R. H. Thompson,* for appellant, and by *L. Brame,* for appellee.

WATKINS, Special Judge*, delivered the opinion of the court.

This is an appeal by the city of Jackson, the appellant, from a judgment recovered against it in the court below by Preston, the appellee. The declaration in the case alleges substantially that during the entire year 1907, and for some years prior thereto, Preston, the appellee, was the sole owner of that certain property in the city of Jackson, Miss., upon which was situated what is known as "Belhaven College," an educational institution; that the appellee was the president of said college and sole proprietor thereof; that Belhaven College is an institution for the education of youth, and that the property in question was during the entire year 1907 used by the appellee directly and exclusively for such educational purposes, and therefore was not liable to the appellant for an ad valorem tax for the year 1907, being exempt, as it is claimed, under paragraph "d" of section 4251 of the Code of 1906; that, notwithstanding the fact entitling the appellee to claim its exemption, the board of mayor and aldermen of the city of Jackson proceeded to assess the appellee's property for the taxes of said year, and, according to the allegations of the declaration, would

---

* FLETCHER, J., being disqualified, recused himself, and W. H. WATKINS, ESQ., a member of the supreme court bar, was appointed and presided in his place in this case.

have advertised said property for sale for the collection of said taxes unless payment was made by the appellee. Whereupon, for the purpose of preventing said property from being sold by the appellant upon the 1st day of February, 1908, the appellee, under protest, paid the amount demanded by the appellant, obtaining therefor the receipt of the city clerk and tax collector, which receipt bore the indorsement that the taxes were paid by the appellee under protest. To this declaration a demurrer was interposed by the appellant. The demurrer was overruled, and, the appellant having declined to plead, judgment for the amount involved was entered in favor of the appellee, from which judgment this appeal has been prosecuted by the city of Jackson, and presents for our decision a construction of paragraph "d" of section 4251 of the Code of 1906, which section provides for the exemption from taxation of certain specific property therein enumerated and no other.

The corresponding section of the Code of 1892 was section 3744, and paragraph "d" thereof contains the following language: "All property, real or personal, belonging to any religious or charitable society or incorporated institution for the education of youth, used exclusively for the purpose of such society or institution and not for profit." Substantially the same provision was contained in the Code of 1880, the Code of 1871, and the Code of 1857. It is contended by the appellant that the property upon which Belhaven College is situated, and which is admitted to be used directly and exclusively for educational purposes within the meaning of the provision under construction, did not, during the year 1907, belong to any college or educational institution, but was the property of Preston, and therefore not exempt under the terms of the statute. While the demurrer of the appellant presents one or two other minor questions, we are led to infer, from the brief of counsel and the oral argument in this court, that no other question is relied upon for a reversal of the judgment in this case. In discussing this question the intention of the legislature is the guide which we

must follow. It is therefore the duty of this court to first ascertain the legislative intent, and then to so construe the act as to effectuate that intention, provided the language in the statute is reasonably susceptible of this construction. In order to arrive at the intention of the lawmaking body, we must study the previous statutory provisions in reference to this subjectmatter, the changes found in the present section, and must interpret them in the light of the well-known public policy of the state. The changes in the present code are very material. From a comparison it will be seen that the words "not for profit" were by the legislature omitted from the last clause of the paragraph under construction having reference to the exemption of colleges and educational institutions, but were reinserted at the end of the first part of paragraph relating to the exemption of religious or charitable societies; also the words "incorporated institutions for the education of youth" were omitted, and the words "all property, real and personal, belonging to any college or institution for the education of youth" inserted instead. These changes are very marked and it is our duty to attribute some reason to the legislature for making them.

When we look at the public policy of the state, we know that it is a matter of history that its cherished ambition has been that every youth within its borders should be provided with proper and sufficient educational facilities. This we gather, not only from the organic law of the state, but from the enactments of the legislature, and from the public utterances of our great men. The state was the first to realize its own inability to provide the educational advantages which were even reasonably necessary, and that the advantages offered by it must be supplemented by the efforts of private educational institutions. It therefore became a part of the public policy of this state to encourage private educational institutions by exempting "incorporated institutions" from taxation. The fact that, under the previous statutes, the exemption was confined to incorporated

institutions, was not, in our judgment, evidence of any disposition on the part of the legislature to discriminate against individuals, but more likely grew out of the fact that private education was, for the most part, furnished by incorporated educational institutions, created for that purpose. This policy was pursued for many years, until it was evidently made apparent to the legislature, not only that this useful work was being carried on by private individuals, to whom should be extended the advantages afforded by exemption from taxation, but it was evidently thought and considered by the legislature that the interests of education were better promoted and advanced by encouraging individual effort for profit. So we find that in the part of the paragraph under discussion the words "not for profit" were eliminated. Viewing in this light, as we have done, the changes in our statute and the well-known public policy of our state, we are forced to the conclusion that the legislature intended to place on the same footing and exempt from taxation property belonging to all colleges and institutions of learning for the education of youth, whether belonging to an incorporated institution or to a private individual, and without regard to whether the institution was operated for profit or for purely philanthropic purposes, when used directly and exclusively for such purpose. This conclusion cannot be escaped, and to hold otherwise would treat as absolutely meaningless the changes made by the law-making body, and, in our judgment, do violence to a clearly manifest legislative purpose. Of course, the legislature must express its intention through human language, and must use such appropriate words as can be reasonably construed to carry out their evident intention. The language used by the legislature is not as clear and free from ambiguity as might be desired, and, were it not for the fact that the legislative intent, gathered from the sources we have given, is so manifest, we would not be free from doubt ourselves.

Learned counsel for the appellant call our attention to the fact that in paragraphs "b" and "c" of this same section, having reference to property "belonging to the United States and belonging to this state," the term "belonging to" implies ownership, and urges upon us the necessity of adopting the same meaning to the words "belonging to" in the paragraph which we are now considering. It is very apparent to us that in the paragraphs above referred to the words "belonging to" imply ownership; but in the paragraph under discussion the legislature was dealing with a different subject-matter and guided by a different public policy. We therefore have no difficulty in arriving at the conclusion that the words "belonging to" in paragraph "d" were used with a different meaning by the legislature, and can be reasonably construed by us so as to carry out its evident purpose. This is especially true when we bear in mind that a college and an institution of learning are but entities, and must of necessity be themselves the subject of ownership, and, being the subject of ownership, they must belong either to a corporation or a private individual or individuals, since property under our law must belong either to a natural or an artificial person. The appellant treats a college and an educational institution as separate and distinct from their ownership, whereas in the present instance the appellee owned the property in question and at the same time himself used it directly and exclusively as a college and institution for the education of youth. The paragraph under discussion makes no distinction between a college or an educational institution owned by a joint-stock company, a religious denomination, or association of persons capable of holding property, and one owned by a private individual. We can make none ourselves. This being true, we are therefore of the opinion that the property in question, which is sought to be exempt from taxation, within the meaning of the legislature, "belonged to" a college or an institution for the education of youth, and was, there-

fore, not liable to taxation.   We wish to be understood as deciding only the case presented by this record.

We are therefore of the opinion that the judgment of the court below was correct, and is affirmed.

*Affirmed.*