## Richmond

BOARD OF SUPERVISORS OF WYTHE COUNTY v. MEDICAL GROUP FOUNDATION, INCORPORATED.

January 20, 1964.

Record No. 5682.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*E. G. Shaffer*, for the plaintiff in error.

*Henry F. Lerch* (*W. P. Parsons; Parsons & Arthur; Wallace, Lerch & Pillote*, on brief), for the defendant in error.

I'Anson, J., delivered the opinion of the court.

■ This is an appeal by the Board of Supervisors of Wythe county, herein called the Board, from an order holding that certain real estate owned by Medical Group Foundation, Incorporated, herein called the Foundation, and leased by it to the Wytheville Hospital Corporation, herein called the Hospital Corporation, is exempt from taxation under § 183 of the Constitution of Virginia and § 58-12, Code of 1950, as amended, 1959 Repl. Vol.; that the Foundation is entitled to a refund of real estate taxes erroneously paid to the county for the years 1958 and 1959; and that the property is exempt from taxes assessed against it for the years 1960, 1961 and 1962, which have not been paid.

The crucial issue presented is whether the land and buildings owned by one charitable corporation and leased by it to another charitable corporation to be operated as a hospital, not for profit, but exclusively as a charity, belongs to a hospital within the meaning of § 183(e) of the Constitution of Virginia, and its legislative construction, Code § 58-12(5), so as to exempt it from real estate taxes.

The Foundation was organized under the laws of this State on July 20, 1948, as a nonstock, nonprofit corporation. The charter provides that no member shall at any time be considered to be the owner of or entitled to any of the assets, funds or properties of the Foundation, and no portion of its net earnings shall by any means inure to the benefit of any officer, trustee or member thereof.

The by-laws of the Foundation provide that its "primary object or immediate consideration is to sponsor small medical institutions by the establishment of facilities for the group practice of medicine by Christian physicians," and to "act as a coordinating and controlling body for the establishment, maintenance and operation of self-supporting sanitarium-hospital units limited in size to not over 75 beds."

In the latter part of the year 1954 the Foundation completed the construction of and fully equipped a hospital on a tract of land containing approximately 34 acres in Wythe county.

Funds for the purchase of land and construction of the hospital building were received from public subscriptions, the sale of property owned by the Foundation, and a loan on the hospital property in the amount of $100,000 from the Jefferson Standard Life Insurance Company.

On January 4, 1955, the Foundation leased the property to the Hospital Corporation, a nonstock, nonprofit corporation organized under the laws of this State, to be operated as a hospital. The lease was for a period of fifteen years from January 1, 1955, with the right of renewal for an additional five years, at a monthly rental of $2400. The rent was an amount which the Foundation anticipated would be required to curtail the $100,000 loan and to meet other obligations it incurred in equipping the hospital.

The hospital operates on an open staff basis under the name of the Wytheville Hospital, and patients are admitted without regard to their ability to pay, but those able to pay are charged for services rendered.

The Hospital Corporation encountered financial difficulties in its operation and was unable to meet even its normal operational expenses. To aid the Hospital Corporation in its plight, the Foundation, during the year 1961, wrote off $59,101.26 due it under the lease and refinanced the loan with the aforementioned insurance company for $100,000. The Foundation had paid $59,000 on the loan from its own assets, and the $41,000 received from the refinancing was turned over to the Hospital Corporation to pay its operating deficit.

On April 1, 1961, a new fifteen-year lease was entered into between the Foundation and the Hospital Corporation, at a monthly rental of $2500, which the Foundation says was the amount needed to amortize the refinanced mortgage. It also contained other provisions similar to those in the first lease.

There are three physicians on the hospital staff, known as the Malin Medical Group, who conduct the hospital's outpatient clinic and perform various medical services for hospital patients, both indigent and paying. The physicians devote their entire time to performing services at the hospital and do not engage in private practice of medicine.

Fees for the services rendered by the staff physicians are billed by and deposited to the account of the Foundation. A percentage of the amount thus collected is paid to the doctors rendering the services, and a percentage to the Hospital Corporation to help pay its operational expenses. The excess of the amount thus collected over expenses, which is negligible, is used by the Foundation in furtherance of its charitable objectives. The records show that the amount paid the staff doctors for their services is very modest and that more than

$250,000, carried as accounts due from patients who were treated by the staff physicians, was written off as uncollectible.

The hospital property was first assessed for taxation by the county in 1958, although it had been in operation for three years at that time.

Section 183 of the Constitution of Virginia exempts certain properties from taxation. It provides in part:

"Unless otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes:

          *      *      *      *      *      *      *

"(e) Real estate belonging to, actually and exclusively occupied and used by * * * hospitals * * * conducted not for profit, but exclusively as charities * * *.

          *      *      *      *      *      *      *

"Whenever any building or land, or part thereof, mentioned in this section, and not belonging to the State, shall be leased or shall otherwise be a source of revenue or profit, all such buildings and land shall be liable to taxation as other lands and buildings in the same county, city or town."

Section 58-12 of the Code provides in part:

"The following property shall be exempt from taxation, State and local, including inheritance taxes.

          *      *      *      *      *      *      *

"(5) Real estate belonging to and actually and exclusively occupied and used by * * * hospitals * * * conducted not for profit but exclusively as charities, (which shall be deemed to include hospitals operated by nonstock corporations not organized or conducted for pecuniary profit but which may charge persons able to pay in whole or in part for their care and treatment) * * *."

The Board concedes that the property is actually and exclusively occupied and used by the Hospital Corporation for a hospital conducted not for profit, but exclusively as a charity, but it contends that since the property is owned by the Foundation it is not real estate "belonging to" a hospital and is not exempt from taxation. Thus we must first decide whether the hospital property belongs to the Hospital Corporation within the meaning of § 183(e) of the Constitution and its legislative construction, Code § 58-12(5), so as to

exempt it from taxation, even though the bare legal title is in the Foundation.

It has always been the policy of this State to exempt property of the kind described in the various subsections of § 183, and we have repeatedly held, since the adoption of the 1902 Constitution, that this section should not be construed with the same degree of strictness that applies to provisions allowing exemptions contrary to the State's policy, and as to such property exemption is the rule and taxation the exception. *Hanover County* v. *Trustees*, 203 Va. 613, 616, 125 S. E. 2d 812, 815; *Commonwealth* v. *Lynchburg Y.M.C.A.*, 115 Va. 745, 747, 748, 80 S. E. 589, 590, 50 L. R. A., N. S., 1197.

The words "belonging to" are susceptible of two meanings, depending upon the context in which they are used. They may be used as a synonym for "owned by," and as such mean absolute ownership. *Commonwealth* v. *Wilson*, 141 Va. 116, 120, 126 S. E. 220, 221. On the other hand, "belonging to" may mean less than an absolute and unqualified title, such as the absolute right of use. *Sisters of Charity* v. *City of Detroit*, 9 Mich. 94, 98; *City of Jackson* v. *Preston*, 93 Miss. 366, 47 So. 547, 549, 21 L. R. A., N. S., 164; *Shewell* v. *Board of Ed. of Goshen Union Local School Dist.*, 88 Ohio App. 1, 96 N. E. 2d 323, 324; Black's Law Dictionary, 3d ed., Belong, p. 205.

From the context of § 183 (e) and its statutory interpretation, when construed in the light of other subsections and the policy of the State as to exempted property, we hold that "belonging to" includes, but is not limited to, an absolute and unqualified title. *Cf.* Annotation, 157 A. L. R. 860, 862, 863.

Subsection (a) deals with property "owned by" the Commonwealth, directly or indirectly, thus making *ownership* of the land the touchstone to exemption. Subsection (b), however, speaks in terms of *occupying and owning*, thereby giving a twofold test to determine the exempt status of land owned by churches or religious organizations. Subsection (d) says that property must be "owned by" the types of institutions therein specified, and the second sentence of the subsection says that the property must be primarily *used for* certain purposes, making *ownership and use* the crucial factors.

In these three subsections immediately preceding subsection (e), ownership, or ownership and use of the land are determining factors in deciding whether the specified property is exempt from taxation. This is not the test laid down in subsection (e), which we are con-

cerned with here. In (e), the property is exempt if it is "real estate belonging to, actually and exclusively occupied and used by" a hospital "conducted not for profit, but exclusively as" a charity. This is the first time the expression "belonging to" is used in § 183.

It would have been a simple matter for the framers of the Constitution to use the expression "owned by" in all four instances, and thereby require that the named institution own the property absolutely as a prerequisite to exemption. This was not done in subsection (e), however, and we must conclude from this that they intended that the words "belonging to" require only that the hospital have some interest or estate in the land it occupies and uses, not necessarily absolute ownership, as the words "owned by" would import. In this sense the real estate here in question "belongs to" the Hospital Corporation, so long as it has the exclusive right to its possession under the lease. Any other conclusion would be based upon the severest technical construction.

The Board contends, however, that even if the hospital property is exempt under § 183(e) and the statutory construction of that section, the exemption is lost by virtue of the leases which the Foundation and the Hospital Corporation entered into in 1955 and 1961. It relies on that paragraph of § 183 of the Constitution which provides that real estate mentioned in this section shall be liable to taxation whenever it "shall be leased or shall *otherwise* be a source of revenue or profit." (Italics supplied.)

From the plain wording of the above quoted language in § 183 it is manifest that every lease will not work a forfeiture of the exempt status which the leased property may have previously enjoyed. The lease must be one which will be a source of revenue or profit to the lessor if the word "otherwise" is to be given any meaning whatever. Thus a lease which is not a source of revenue or profit will in no way affect the exempt status of the real estate for tax purposes.

The charter and by-laws of the Foundation show that it is a non-stock, nonprofit corporation and that no one associated with it derives any financial benefit from its operations. In furtherance of one of its objects and purposes, the Foundation gave of its assets and pledged its credit to purchase the land in question and to construct and equip the hospital building upon it. By constructing the building and leasing it to the Hospital Corporation, a nonprofit corporation, the Foundation dedicated the property for use as a nonprofit hospital for the benefit of the general public and to promote the general welfare, even

though both charities anticipated funds from paying patients to meet obligations incurred in providing the facilities.

We have repeatedly held that a nonstock, nonprofit hospital, chartered to care for persons in need of hospitalization, and which pays no dividends to anyone, does not lose its charitable status by charging patients who are financially able to pay. *City of Richmond* v. *Hospital*, 202 Va. 86, 93, 94, 116 S. E. 2d 79, 83, 84; *Memorial Hospital, Inc.* v. *Oakes, Adm'x*, 200 Va. 878, 884, 108 S. E. 2d 388, 393; *Weston's Adm'x* v. *Hospital of St. Vincent, Etc.*, 131 Va. 587, 107 S. E. 785, 23 A. L. R. 907.

The destination or use of the funds derived by hospitals from paying patients is the ultimate test for exemption of property from taxation. *Hospital Association* v. *Wise County*, 203 Va. 303, 307, 124 S. E. 2d 216, 219.

If income derived has a direct reference to the purposes for which a charitable corporation is established and tends to immediately and directly promote these purposes, then its use is within the provisions exempting the property from taxation, although revenue or profit is derived therefrom as incident to its use. *Commonwealth* v. *Lynchburg Y.M.C.A., supra*, 115 Va. at p. 752, 80 S. E. at p. 591.

In the present case the rental which the Hospital Corporation agreed to pay the Foundation tends immediately and directly to promote the objects and purposes for which the Foundation was chartered. Indeed, the amount to be received by the Foundation under the lease was to pay on the loan secured by the property in order to prevent a foreclosure and assure the continued existence of hospital facilities. Thus the lease between the Foundation and the Hospital Corporation was not a source of revenue or profit. The lease discloses a joint effort between two charitable corporations to accomplish the purposes for which they were chartered, and it does not affect the tax exempt status of the hospital property. See *St. Andrew's Association* v. *City of Richmond*, 203 Va. 630, 636, 637, 125 S. E. 2d 864, 868.

The case of *People* v. *University of Illinois Foundation*, 388 Ill. 363, 58 N. E. 2d 33, presents a situation similar to the present case. There the University Foundation held legal title to property it leased to the University at an annual rental in an amount needed to discharge certain construction loans. The Illinois Constitution provided that certain property was exempt from taxation as might be provided by general law. Pursuant to this authority, the legislature

promulgated a provision, exempting from taxation "all property of schools, including the real estate on which the schools are located and any other real estate used by such schools exclusively for school purposes, not leased by such schools or otherwise used with a view to profit."

The taxing authorities contended, among other things, that the lease from the Foundation to the University destroyed any exemption, and that the situation was analogous to one in which a private owner leased his property and applied the rentals which he obtained to the payment of his debts.

The court rejected this argument, and said:

"[T]he phrase in the applicable statute 'with a view to profit' modifies both the word 'leased' and the word 'used' and, hence * * * leasing, alone, does not divest property of its exempt character unless it be with a view to profit. Application of these tests to the case at bar discloses that the present use of each of the four properties is for at least one exempt purpose, namely, public education. The mere fact that a part of the enterprise yields income—incidental profit—is but of little importance where, as here, the gross income and the entire property are used directly and exclusively for public educational purposes." 58 N. E. 2d at p. 39.

The fact that the Foundation received some incidental income from medical services rendered by the staff physicians, which it used to promote its charitable purposes, neither makes the Foundation a non-charitable corporation nor affects the tax exempt status of the hospital property under the facts and circumstances of this case. *People* v. *University of Illinois Foundation, supra.* See *Hospital Association* v. *Wise County, supra.*

For the reasons stated, the judgment of the trial court is

*Affirmed.*