## DKM Richmond Associates, L.P.

### v.

## City of Richmond

Record No. 941042

April 21, 1995

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell and Keenan, JJ., and Poff, Senior Justice

S. *Miles Dumville (Vernon E. Inge, Jr.; Hazel & Thomas*, on briefs), for appellant.

*William G. Broaddus (Michael L. Sarahan, Acting City Attorney; Sandra R. Robinson, Asst. City Attorney; McGuire, Woods, Battle & Boothe*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

This is a dispute between a municipality and a taxpayer over a partial exemption from local real estate taxes due to rehabilitation of a structure on the subject property.

According to the Constitution of Virginia, the "General Assembly may by general law authorize the governing body of any . . . city . . . to provide for a partial exemption from local real property taxation, within such restrictions and upon such conditions as may be prescribed, of real estate whose improvements, by virtue of age and use, have undergone substantial renovation, rehabilitation or replacement." Va. Const. art. X, § 6(h).

At the time of this controversy, Code § 58.1-3221(A) (1991 Repl. Vol.), the enabling statute, permitted the governing body of any city to provide by ordinance "for the partial exemption from taxation of real estate on which a structure no less than twenty-five years of age has been substantially rehabilitated for commercial or industrial use, subject to such conditions as the ordinance may prescribe." The enabling statute also permitted a city's governing body to "establish criteria for determining whether real estate qualifies for the partial exemption" and to "place such other restrictions and conditions on such property as may be prescribed by ordinance." *Id.*

The enabling statute further stated that the "partial exemption provided by the local governing body may not exceed an amount equal to the increase in assessed value resulting from the rehabilitation of the commercial or industrial structure as determined by the . . . local assessing officer . . . ." Code § 58.1-3221(B). The statute also provided the "exemption may commence upon completion of the rehabilitation or on January 1 of the year following completion of the rehabilitation or replacement and shall run with the real estate for a period of no longer than ten years." *Id.* The statute further provided the city's governing body "may place a shorter time limitation on the length of such exemption, or reduce the amount of the exemption in annual steps over the entire period or a portion thereof, in such manner as the ordinance may prescribe." *Id.*

The legislature amended the enabling statute in 1994, but the changes do not affect the issues in this controversy. *See* Code § 58.1-3221 (1994 Cum. Supp.).

Appellee City of Richmond has provided by ordinance for partial exemption from real estate taxes for qualifying property rehabilitated in accordance with the criteria set out in the Constitution and the enabling statute. Richmond, Va., Code § 27-83(a) (1993) (formerly § 28-86).

The ordinance generally provides that commercial or industrial real estate shall be deemed substantially rehabilitated when a structure on the real estate, which is no less than 25 years old, has been improved by renovation as to increase the assessed value of the structure by no less than 60 percent. City Code § 27-83(b). The ordinance also provides that in order to qualify for partial tax exemption for rehabilitation of a structure, an owner shall, simultaneously with making application for a building permit to reha-

bilitate such structure, file an application to qualify such structure as a rehabilitated structure. *Id.*

The ordinance further provides that, upon receipt of an application for tax exemption, the City Assessor "shall determine the assessed value (hereafter referred to as base value) of the structure prior to commencement of rehabilitation. Such assessment shall serve as a basis for determining whether the rehabilitation undertaken increases the assessed value of such structure by at least sixty (60) percent." *Id.* The ordinance also provides that when there is a determination "that a sixty-percent increase in assessed value (base value is exceeded by sixty (60) percent or more) has occurred, the tax exemption shall become effective beginning on January 1 of the next calendar year." *Id.*

The focus of this controversy is upon the following portion of the ordinance. As pertinent, it provides:

> "The owner or owners . . . of property qualifying for partial exemption of real estate taxes because of rehabilitation of a structure shall be issued a credit memorandum in the amount of the difference in taxes computed upon the base value and the initial rehabilitated assessed value of the property for each year of [a] five-year period of partial exemption from real estate taxes . . . . An increase in assessment occurring after the first year of such rehabilitation exemption (i.e., credit) shall not qualify for an increase in such exemption." City Code § 27-83(c).

The ordinance authorizes the City's Assessor of Real Estate to prescribe appropriate rules and regulations for processing applications for rehabilitated property exemptions. City Code § 27-86(d).

During the 1980s, appellant DKM Richmond Associates, L.P., a New Jersey limited partnership, owned a parcel of land improved with a multi-story structure, formerly known as the First National Bank Building, located in the City of Richmond at the southwest corner of Ninth and East Main Streets. The taxpayer completed a major, 24-month rehabilitation project, making substantial renovations to the building.

In December 1988, the City approved, in the words of the taxpayer's representative, the taxpayer's "request for partial exemption on the rehabilitation." A city publication summarizing the

requirements and criteria for the partial exemption stated that "the initial increase in real estate taxes caused by rehabilitation will be excused for five (5) years." A preprinted form letter from the City Assessor's office approving the request advised the taxpayer that the "credit or tax relief caused by rehabilitation will run for five (5) years effective January 1, 1989."

The assessed value for the tax year 1989 of the land was $600,000 and of the building before rehabilitation ("the base value") was $5,475,000. The 1989 assessed value of the building after rehabilitation ("initial rehabilitated assessed value") was $13,550,000. Thus the exempt value due to rehabilitation upon which the tax credit was based was $8,075,000 ($13,550,000 minus $5,475,000). Applying the prevailing tax rate of $1.53 per $100 of value, the City issued a tax credit of $123,547 for that year applicable to the subject property.

According to the City's tax-collection procedures for the partial exemption, the taxpayer receives annually a memorandum showing the credit for that year and a bill showing the total tax for the land and improvements. When due, the taxpayer must remit the difference between the total tax and the amount of the credit.

For the years 1989, 1990, and 1991, the foregoing assessed values remained essentially the same, and the taxpayer paid taxes on the property, receiving a credit each year.

At the request of the taxpayer, the City reassessed the property in 1992 and determined that the value of the land remained at $600,000 but that the full value of the building had declined to $6,000,000 for a total assessed value of the entire property of $6,600,000. The taxpayer, of course, did not challenge these appraisals.

Because the "base value" of the building (the value before rehabilitation) was $5,475,000, the City concluded that the value of the rehabilitation at that time was $525,000 ($6,000,000 minus $5,475,000). Applying the prevailing tax rate of $1.45 per $100 of value, the City issued credit memoranda for 1992 and 1993 of $7,612.50 each.

The taxpayer objected to the reduction of the credit for 1992 and 1993, taking the position that "the rehabilitation tax credit should be based on $8,075,000.00, which is in excess of the current assessed value" and that "no taxes should be due on this property" for those years. The City refused the taxpayer's request for a refund of the 1992 taxes, which it had paid, and rendered a

bill for the 1993 taxes based on the values disclosed by the reassessment.

In September 1993, the taxpayer filed a motion for judgment against the City pursuant to Code § 58.1-3984 (permitting court action to correct erroneous assessments of local taxes) seeking correction of the allegedly improper application of the credit for the 1992 and 1993 tax years. Asserting the credit effective January 1, 1989 "had a duration of five (5) years," the taxpayer alleged that the City Assessor improperly reduced the credit for those years administratively without authority. The taxpayer asserted that this "arbitrary reduction" in the credit resulted in keeping the net amount of taxes to be paid by the taxpayer "exactly the same as the amount to be paid before the reassessment of the value of the Property." The taxpayer asked the trial court, in properly applying a credit for the years in question, to order a refund of the 1992 tax payment and to determine that no tax was due for 1993.

Following the taking of evidence during a bench trial, the court ruled in favor of the City. In a letter opinion, the trial court concluded that the reduction of the taxpayer's "tax credit upon the decline of the property's assessed value is consistent with the purpose underlying the constitutional authority, the enabling legislation, and the ordinance." The court said, "Those enactments sought to encourage rehabilitation of certain properties by providing property owners with a tax exemption limited to that portion of the assessed value attributable to the rehabilitation. Never was it intended that the exemption apply to the value of the land or to improvements that existed before the rehabilitation effort."

The trial court observed that under the City's treatment of the credit, the taxpayer would continue to be exempt from real estate taxes on that portion of the property's value attributable to the rehabilitation. However, the court noted, under the taxpayer's construction of the ordinance, the taxpayer "would have the credit apply to the land and to the pre-rehabilitation improvements. That would be in conflict with the constitution, the statute and the ordinance." We awarded the taxpayer an appeal from the March 1994 judgment order.

On appeal, the taxpayer argues that the City, through its Assessor, has engaged in an "administrative reduction of the exemption upon the decline of the property's assessed value" that is not authorized by the ordinance. The taxpayer points out the ordinance "provides that the amount of the exemption shall not

change if the assessment on the Property goes up, and that the Credit shall be based on the *'initial* rehabilitated assessed value' of the Property," citing City Code § 27-83(c). The taxpayer says, "It is clear from the face of the Ordinance that the amount of the Credit is not to be changed by the Assessor's Office after it has been established." The taxpayer contends that because an increase in assessment occurring after the first year of the exemption does not qualify for an increase in the exemption, then a decrease in the assessed value should not decrease the exemption.

The taxpayer argues, "This credit was to remain constant throughout the five-year period of the exemption." Continuing, the taxpayer says that the "plain language of the Ordinance demonstrates that the legislative intent was to grant the taxpayer a credit based on the improvements that he added to his property, and the value of these improvements to the taxpayer is fixed at the time of making the improvements." The taxpayer argues that the trial court's ruling "erroneously permits the value of the Credit to fluctuate during the period of the Credit in violation of the plain language of the Ordinance."

We do not agree with the taxpayer. Even though the taxpayer's arguments are superficially persuasive, a close analysis demonstrates the correctness of the trial court's ruling.

In Virginia, the general policy is to tax all property. *See* Va. Const. art. X, § 1. "Exemptions of property from taxation . . . shall be strictly construed" against the taxpayer. *Id.* § 6(f). Under this rule, exemption from taxation is the exception, and any doubt is resolved against the one claiming the exemption. *Westminster-Canterbury of Hampton Roads, Inc.* v. *City of Virginia Beach*, 238 Va. 493, 501, 385 S.E.2d 561, 565 (1989). And, the taxpayer has the burden to establish that it comes within the terms of the exemption. *Commonwealth* v. *Manzer*, 207 Va. 996, 1000, 154 S.E.2d 185, 189 (1967).

Pertinent to the present case, the Constitution permits only a partial exemption for qualifying property that has been substantially rehabilitated. The enabling statute provides that the extent of the "partial exemption . . . may not exceed an amount equal to the increase in assessed value resulting from the rehabilitation." Code § 58.1-3221(B).

Consistent with the enabling statute, as the City points out, the ordinance in question provides only for a partial exemption to offset the increase in taxes caused by the qualifying reha-

bilitation. City Code § 27-83. In other words, the credit is available for the limited purpose of offsetting a specific portion of the total assessment on the property, that is, the portion resulting from the rehabilitation. It must be remembered that the word "assessment" in this context refers to the determination of the value of the property as the result of an appraisal, and not to the dollar amount in taxes the individual is supposed to pay. *Board of Supervisors of Fairfax County* v. *Leasco Realty, Inc.*, 221 Va. 158, 165, 267 S.E.2d 608, 612 (1980).

■ Because the exemption is only partial, something must necessarily remain for taxation. That which remains is the land and the base value of the building. The taxpayer does not dispute the $600,000 assessment of the land component of the 1992 reassessment. And it will not be heard to deny that the base building component presently has fair market value. The evidence showed that the building "was structurally extremely sound" and "an architectural masterpiece" before renovation. These two components remain subject to taxation without offset by any credit. Indeed, the taxpayer did not offer any proof that the 1992 or 1993 fair market value of the property was $0; except for its argument concerning application of the ordinance, the taxpayer did not attempt to establish that the total assessment of $6,600,000 was erroneous; and it did not offer any evidence that the 1992 and 1993 value of the rehabilitation was different than $525,000.

The taxpayer's contention in its motion for judgment that the entire property should be wholly exempt from taxation for the years in question is simply illogical and is not within the contemplation of the constitutional and statutory provisions dealing with partial exemptions for qualifying rehabilitated property. An example alluded to during the trial and mentioned during oral argument of the appeal will illustrate the fallacy of the taxpayer's position.

Assume that a fire completely destroyed the interior renovations to this building during the third year of the five-year period, leaving the building as it existed prior to rehabilitation standing on the land. The land and the remaining building would still have fair market value. But, under the taxpayer's theory, the land and the remaining structure would be exempt from taxation for two more years because of rehabilitation which no longer exists. Nothing in the pertinent enactments envisions such a result.

Finally, we address the taxpayer's arguments (1) that an improper usurpation of legislative authority occurred by the City Assessor's "action of administratively reducing the partial tax exemption," and (2) that the initial amount of the credit remains fixed for the whole five-year period.

■ First, the tax exemption was not administratively reduced. When the property was reassessed, the exemption was reduced by operation of law. The amount of the credit then was computed by the ministerial act of applying the prevailing tax rate to the amount of the undisputed assessment.

Second, the taxpayer claims that the credit must remain constant because the ordinance provides that the owner qualifying for a partial exemption "shall be issued a credit memorandum in the amount of the difference in taxes computed upon the base value and the initial rehabilitated assessed value of the property for each year of the five-year period." City Code § 27-83(c).

■ We will assume that this imprecise portion of the ordinance must be read to mean that the dollar amount of the credit remains constant. Nevertheless, as we already have pointed out, the credit can be used only against a specific portion of the assessment, that is, the increase in assessment resulting from the rehabilitation. And nothing in the ordinance suggests that the assessment must remain constant for five years. Indeed, the ordinance specifically refers to a change when it provides that no increase in assessment occurring after the first year shall result in an increased exemption. So, that contention of the taxpayer does not afford it any relief.

■ Accordingly, we hold that the taxpayer has failed to carry its burden to show entitlement to the partial exemption it claims. Thus, the judgment below will be

*Affirmed.*