# CIRCUIT COURT OF THE CITY OF RICHMOND

Richmond Memorial
Hospital

v.

City of Richmond

June 13, 2001

Case No. LF-20-1

BY JUDGE MELVIN R. HUGHES, JR.

In this case, plaintiff Richmond Memorial Hospital (RMH), which for many years has been exempt from the payment of real estate taxes as a non-profit hospital, has brought an action against the City of Richmond alleging an erroneous assessment for tax years 1996 through May 31, 1998. The case is brought under Va. Code § 58.1-3984 which authorizes suits for relief from erroneous tax assessments. The case has many issues all bearing on whether the RMH property should continue to enjoy tax exempt status. The salient issues bearing on the ultimate question, whether the property is exempt for the years in question — are set out below and are resolved based on the parties' written submissions of proposed findings of facts and conclusions of law.

*Factual Background*

RMH is a non-profit charitable hospital. It owns the property at issue, which has been exempt from City property taxes for many years.

In 1996, the Health Corporation of Virginia, the parent organization of RMH, entered into a joint venture with the Bon Secours Hospitals in Richmond to operate RMH as a hospital on a non-profit basis. Both Health Corporation of Virginia and Bon Secours are non-profit organizations. As part of the joint venture, in July of that year, RMH entered into a Hospital Lease Agreement with RHS Service Corporation which was organized by the joint venture to conduct the hospital operations of RMH under the lease. Under the lease, RMH leased all of its assets, real and personal, tangible and intangible, to RHS Service Corporation. RMH and RHS Service Corporation further entered into an employee lease agreement whereby RMH leased all of its employees to RHS Service Corporation for the purpose of continuing the hospital operations at and on the properties. In July 1996, the Assessor of the City of Richmond determined that RMH was no longer operating a non-profit hospital because the lease agreement produced an annual rental payment of five million dollars. Accordingly, the City declared that the property was no longer exempt and assessed RMH's property for taxes due.

### Burden of Proof

While RMH makes no specific mention of the issue in its proposed findings of fact and conclusions of law, the City maintains in its submissions that RMH bears the burden of proof that the property should enjoy tax exempt status.

In *City of Richmond v. Richmond Memorial Hosp.*, 202 Va. 86 (1960), the Supreme Court decided RMH was entitled to be exempt from the City's property tax for 1956 and 1957. Thus, RMH argues its tax exempt status should continue to be recognized. Further, RMH maintains that the City's assessment for taxes is not entitled to a presumption of correctness because Va. Code § 58.1-3984, the statute dealing with taxpayer initiated applications for correction of an assessment, as here, does not apply to a question of exemption and because the City never made required factual determinations to justify the change.

The court does not agree with RMH. Va. Code § 58.1-3984(A) provides that in an application to a circuit court to correct an assessment, "[T]he burden of proof shall be upon the taxpayer to show . . . that the assessment is . . . invalid." The court has said that in proceedings under § 58.1-3984 there is a presumption of validity of the assessment and that a taxpayer claiming an exemption has the burden of proof on the question of entitlement to it. *See City of Richmond v. Gordon*, 224 Va. 103, 110 (1982); *Westminster-Canterbury of Hampton Roads, Inc. v. City of Virginia Beach*, 238 Va. 493,

502 (1989); *DKM Richmond Assoc. v. City of Richmond*, 249 Va. 401, 407 (1995). So, the burden is on RMH. The question of whether the exemption allowed historically to RMH is or is not subject to a rule of liberal construction, over which the parties also disagree, is a different question to be discussed *infra*.

## Construction of the Exemption

As noted, up to 1996, RMH's property was exempt from taxation. The Virginia Constitution creates certain exemptions from taxation and authorizes the General Assembly to establish others. *See* Va. Const., Art. X, § 1. "The Constitution authorizes the General Assembly to exempt from taxation property used by its owner for charitable, historical, benevolent, or cultural purposes 'subject to such restrictions and conditions as may be prescribed.' Art. X, § 6(a)(6)." *Mariner's Museum v. City of Newport News*, 255 Va. 40, 44 (1998).

The Constitution further provides in § 6(f) that all exemptions shall be strictly construed against the taxpayer. Under strict construction, "[E]xemption from taxation is the exception, and any doubt is resolved against the one claiming the exemption." *Id.* at 44 (quoting, *DKM Richmond Assocs. v. City of Richmond*, 249 Va. 401, 407 (1995)).

The rule of strict construction was included in the Virginia Constitution by a revision in 1971. Before then, the courts applied a liberal interpretation to the exemption afforded in the Constitution and in law. Under a liberal construction, "[E]xemption is the rule and taxation is the exception." *Board of Supervisors of Wythe County v. Medical Group Found., Inc.*, 204 Va. 807, 811 (1964). For tax exemptions in effect prior to 1971, as here, Article X, § 6(f), continued the policy of liberal interpretation for those exemptions. Accordingly, Va. Code § 58.1-3606(B) codified the "grandfather" provision of the Constitution by providing:

> Property, belonging in one of the classes listed in subsection A of this section, which was exempt from taxation on July 1, 1971, shall continue to be exempt from taxation under the rules of statutory construction applicable to exempt property prior to such date.

Va. Code Ann. § 58.1-3606 (2000 Repl. Vol.).

However, the Supreme Court of Virginia held in *Mariner's Museum* that despite having the benefit of the pre-1971 liberal construction rule, a lease

agreement entered into post-1971 was a defining act which invokes the rule of strict construction. The court said:

> Even assuming the property was exempt in 1971, however, the Museum is not eligible for protection under the grandfather clause. The execution of the 1989 lease was a defining and controlling event that operated as a forfeiture under Code § 58.1-3603. Property exempt under a 1971 grandfather clause does not remain perpetually exempt regardless of post-1971 actions by the property owner.

255 Va. at 48

The court finds, therefore, that because of the 1996 lease agreement, RMH is not entitled to the liberal construction given to the pre-1971 exemptions.

### RMH's Exemption Under Va. Code § 58.1-3606

As noted, the Virginia Constitution authorizes the General Assembly to exempt from taxation property used by its owner for charitable, historical, benevolent, or cultural purposes "subject to such restrictions and conditions as may be prescribed." Va. Const., Art. X, § 6(a)(6). The General Assembly implemented the foregoing constitutional provisions in Va. Code § 58.1-3606(A), which provides in pertinent part:

> Pursuant to the authority granted in Article X, Section 6(a)(6), of the Constitution of Virginia to exempt property from taxation by classification, the following classes of real and personal property shall be exempt from taxation. . . .
>
> 5. Property belonging to and actually and exclusively occupied and used by the Young Men's Christian Associations and similar religious associations, including religious mission boards and associations, orphan or other asylums, reformatories, hospitals and nunneries, conducted not for profit but exclusively as charities (which shall include hospitals operated by nonstock corporations not organized or conducted for profit but which may charge persons able to pay in whole or in part for their care and treatment).

Va. Code Ann. § 58.1-3606 (2000 Repl. Vol.).

The City maintains that RMH cannot meet these requirements because, while the property belonged to RMH, it did not use and occupy it as a hospital because its sole position after the lease was that of lessor.

In *Board of Supervisors of Wythe County*, the court was presented with a similar question:

> The crucial issue presented is whether the land and buildings owned by one charitable corporation and leased by it to another charitable corporation to be operated as a hospital, not for profit, but exclusively as a charity, belongs to a hospital . . . so as to exempt it from real estate taxes.

204 Va. at 808.

It should be noted that in order to qualify for an exemption not only must the property belong to a hospital, the property must be actually and exclusively occupied and used by a hospital. Thus, the City maintains, under the lease arrangement here, that RMH cannot be said to have actual and exclusive use of the property as a hospital. Rather, the City continues, the only party enjoying actual and exclusive occupancy and use of the property here was RHS Service Corporation, the lessee entity, not RMH, the taxpayer.

"It is the use to which the property is put . . . that determines whether the property shall be exempt." *Mariner's Museum*, 255 Va. at p. 47. A reading of the statute reveals that the exemption extends to property belonging to and whose actual and exclusive use is for "hospitals." Here, it is abundantly clear and uncontroverted that the property is occupied by and used for hospital operations even though that actual use is by RHS Service Corporation, RMH's lessee. In interpreting a statute, the court must first resort to its plain meaning. *See City of Richmond v. Confrere Club*, 239 Va. 77, 81 (1990). The statute's plain meaning here without resort to a strict construction, yields a result that RMH is exempt from taxation. This result obtains, however, even under a strict construction.

### *RMH As Landlord And the Question of Substantial Revenue*

Notwithstanding eligibility for an exemption under § 58.1-3906, Va. Code § 58.1-3603 serves to lift that eligibility if the property in question is a source of revenue or profit. In its pertinent part § 58.1-3603 provides, "[W]henever any building or land, or part thereof, exempt from taxation pursuant to this chapter . . . is leased or is otherwise a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the

same county, city, or town." Or, as interpreted by the court, the applicable standard is "substantial net revenue or profit." *Mariner's Museum*, 255 Va. at 45.

The parties draw issue over the role depreciation and maintenance expense play in determining whether RMH derives substantial net revenue or profit under its lease with RHS Corporation. As noted, RMH, as a part of a joint venture with Bon Secours, entered into a lease agreement whereby RHS Services continued hospital operations on the property as RMH previously did. The lease agreement provided for monthly payments from RHS Service Corporation to RMH which were contemplated to amount to five million dollars a year. RMH asserts that part of the payment was aimed at paying RMH's depreciation expense on capital assets during the lease and that part of the payment was contemplated and calculated to cover repair and maintenance expenses as well. According to RMH, these expenses included the deprecation expense recognized under Generally Accepted Accounting Principles, or GAAP, and by the American Hospital Association. According to the testimony, the provision for lease payments in the parties' lease was deliberately keyed to reimbursing RMH for part of the depreciation applicable to the property and other leased assets. Applying these expenses against the rent receipts, RMH argues, results in a lease agreement which does not provide a substantial net revenue or profit to RMH.

The evidence revealed that the lease required RMH to maintain all buildings and fixed equipment in good working order and condition. To defeat the suggestion that it derives a substantial net revenue or profit from the lease, RMH relies on a non-cash expense in the form of depreciation to bring this revenue down from substantial revenue or profit and thereby maintain its exemption from tax. The City calls this "artificial" and not relevant, stating that depreciation is not taken into account in real estate tax assessment but is rather an income tax or financial statement concept.

While the City has taken this position, there is Virginia authority to the contrary. The Supreme Court has interpreted § 58.1-3603 to mean that the existence of a lease on real property which is otherwise exempt will not cause the property to be taxable, "[r]ather, the lease must generate a substantial net revenue or profit before the exemption is forfeited." *Mariner's Museum*, 255 Va. at 45. The court has also ruled that depreciation is an expense that can be considered in determining whether property otherwise exempt is a source of "revenue or profit" within the meaning of the predecessor to § 58.1-3603. *City of Norfolk v. Board of Supervisors*, 168 Va. 606 (1937).

In *City of Norfolk*, the City of Norfolk applied for correction of an erroneous assessment as here. Nansemond County had levied taxes on a

portion of Norfolk's water works which was in the county. Considering the County's position that the property was a source of revenue or profit, the court held that depreciation charges could be considered in determining the question of revenue or profit. The City of Richmond has not cited any authority to the contrary. Based on this precedent, the Court must conclude that here depreciation is a valid component in determining revenue or profit within the meaning of § 58.1-3603. With depreciation considered, the landowner, RMH, cannot be said to derive "the substantial net revenue or profit" which the court has articulated as the standard in these determinations.

### Conclusion

The Court concludes that RMH has borne its burden of proof as to the question of an erroneous assessment raised in these proceedings. Accordingly, it is entitled to the relief prayed for, namely, a declaration that the assessment is erroneous, a direction that the City correct the assessment, a refund of all payment with interest, and an exoneration from payment of any unpaid assessment.