# 𝔖taunton

COMMONWEALTH OF VIRGINIA, ETC. V. TRUSTEES EVER-
GREEN BURIAL PARK, ET AL.

AND

COMMONWEALTH OF VIRGINIA, ETC. V. FAIR VIEW
CEMETERY COMPANY, INC., ET ALS.

September 5, 1940.

Record Nos. 2293, 2294.

Present, Campbell, C. J., and Holt; Hudgins, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*Abram P. Staples, Attorney-General, W. W. Martin, Assistant Attorney-General,* and *Walter E. Rogers, Special Assistant Attorney-General,* for the Commonwealth.

*Hoge & Austin, C. E. Hunter* and *C. R. Williams,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

The question for decision is whether the money, bonds and notes constituting the Perpetual Care Fund of the two cemetery companies, respectively, were taxable under sections 69 and 70 of the Tax Code of Virginia, Code 1936, Appendix, pp. 2414, 2415, which sections impose a tax on intangible personal property.

The Commonwealth contends that the care funds are subject to taxation, while the cemetery companies urge that they are exempt by reason of the provisions of section 183, subsection (c), of the Constitution of Virginia. This latter

proposition is contested by counsel for the Commonwealth, on the ground that the cemetery companies are conducted for profit.

The two cases were tried together and the trial court held that the property in question was exempt from taxation.

Section 183 of the Constitution provides:

"Unless otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes:"

(a) Applies to public property.

(b) Applies to church property.

"(c) Private or public burying grounds or cemeteries and endowment funds, lawfully held, for their care, provided the same are not operated for profit." This provision is repeated in the Tax Code, section 435(c), Code 1936, Appendix, p. 2539.

(d) Applies to public libraries and incorporated institutions of learning, "not conducted for profit."

(e) Applies to the property of the Young Men's Christian Association "and other similar religious associations * * *, conducted not for profit, but exclusively as charities * * * ."

(f) Applies to property of fraternal orders.

(g) Applies to certain specifically named bodies, such as "the association for preservation of Virginia antiquities, Confederate memorial literary society," and others.

*    *    *    *    *    *    *

"Whenever any building or land, or part thereof, mentioned in this section, and not belonging to the State, shall be leased or shall otherwise be a source of revenue or profit, all such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town. * * * "

In the Constitution of 1902, and before the amendment of 1928, subsection (c) of section 183 read thus:

"Private burying grounds not exceeding one acre in area, * * * and so exclusively used, and public burying grounds and lots therein exclusively used for burial purposes, and

not conducted for profit, whether owned or managed by local authorities or by private corporations."

The words, "and no other," in the opening paragraph of section 183, would seem definitely to evidence a policy and to prescribe a rule of strict construction. And the words, "not conducted for profit," in subsection (c) as it read originally, in the Constitution of 1902, and the words, "provided the same are not operated for profit," as that subsection now reads, and the same words, or their equivalents, repeated in subsections (d) and (e), together with the general provisions in the final paragraph excluding from the benefits of the section all buildings and lands mentioned therein—excepting such as belong to the State —in cases where the property "shall be leased or shall otherwise be a source of revenue or profit," would seem quite as definitely to declare a policy of non-exemption in all cases where the company, association or society derives a profit from its operations.

The substance of the decision in the *Hollywood Case* *(Hollywood Cemetery Co.* v. *Commonwealth)*, 123 Va. 106, 96 S. E. 207, is that an endowment fund lawfully held by a cemetery company not organized for profit is taxable. This seemed undesirable in its results, and it was to meet such a situation that the amendment of 1928 was adopted. Beyond that no exemptions were intended.

It is not reasonable to suppose that endowment funds lawfully held and not operated for profit should have been the subject of an independent constitutional exemption, for such funds are never operated for profit but are conserved for the purposes for which they were created. The exemption was intended only for private or public burying grounds or cemeteries not operated for profit and to funds lawfully held and attached thereto. We might paraphrase subsection (c) in this wise, without doing violence to its meaning:

"Private or public burying grounds or cemeteries not operated for profit and endowment funds by them lawfully held can not be taxed."

We come now to a consideration of the facts in the two cases at bar.

Under the plan of operation followed by both companies a certain per cent. of the sale price of each lot is turned over by the cemetery company to a board of trustees appointed either by its board of directors or by the circuit court. The trustees are vested with the legal ownership of the funds thus transferred and were to invest them and pay over the income to the cemetery company. Apparently no formal trust instruments were executed. However, in the case of the Evergreen company the lot sale contract provides that the income so received by the company from the trustees of the Perpetual Care Fund "shall be used for the improvement and maintenance of Evergreen Burial Park and the care of the lots therein," and in the case of the Fair View the stipulation is that such income is "to be used for the perpetual care of the above mentioned lot and for the general care and maintenance of the cemetery as shown in the rules, by-laws and regulations." Section 182 of the by-laws is as follows:

"182. The income from the Perpetual Care Fund shall be expended by the board of directors in such manner as will in its judgment, be most advantageous to the property owners as a whole and in accordance with the purpose and provisions of the laws of the State applicable to the expenditures of such funds. The board of trustees (directors (?)) is hereby given the full power and authority to determine upon what property, for what purpose and what manner the income from said fund shall be expended, and it shall expend said income in such a manner as in its sole judgment, it may deem advisable for the care, reconstruction, repair and maintenance of all or any portion of the cemetery grounds, mausoleum and/or columbarium, and it may also expend said income for bonding fees and taxes and other costs necessary to the preservation of said fund and purposes in which it was established, provided, however, such expenditures do not exceed twenty per cent. (20%) of the income."

Section 191 of the by-laws provides:

"191. * * * the income derived from said fund, as earned, to become the property of the Fair View Cemetery Company and to be used for the Perpetual Care of lots now receiving or hereafter to receive perpetual care and for the general care and maintenance of the cemetery and its appurtenances."

Presumably, the foregoing stipulations in the sales contracts and the provisions quoted from the by-laws constitute the main terms of the trusts.

It is to be observed that as to neither company is the use of the income from the trust fund restricted to the care of the lots, but that it extends, in the case of the Evergreen, to the "improvement" and "maintenance" of the cemetery grounds generally, and, in the case of the Fair View, to "the general care" and "maintenance" of the property "as a whole," and "for the care, reconstruction, repair and maintenance of all or any portion of the cemetery grounds, mausoleum," etc. This, of course, would include such matters as the construction and maintenance of driveways and walks, grading and the planting and care of shade trees and ornamental shrubs, sodding, general grass mowing, and so forth.

By no conceivable device can a cemetery company, organized for profit, set apart a portion of its funds to be used for its own benefit and thereby escape taxation; and the situation is not changed by calling that set apart a "trust." Here the income, in part at least, is to meet expenses which the cemetery has to incur if it is to succeed. To suceed, it must grade its lands, set out trees and shrubbery, and do such things as would induce prospective purchasers of lots to select them as burial places for their dead. Lots in unkempt cemeteries are unsaleable. They can not shift to lot-owners the burden of caring for their corporate properties. And so we have in substance trusts set up by them for their own benefit. Income is not set apart for the upkeep of lots sold; in express terms it is to

be used for general purposes, and so it becomes an inducement to others to purchase, which, in turn, increases their profits. They are necessarily beneficiaries of their own trust.

Their funds should be taxed, and it is so ordered.

*Reversed.*