## $\mathfrak{Staunton}$

### CITY OF RICHMOND v. UNITED GIVERS FUND OF RICHMOND, HENRICO AND CHESTERFIELD, INC.

September 11, 1964.

Record No. 5765.

Present, All the Justices.

*James A. Eichner*, Assistant City Attorney (*J. E. Drinard*, City Attorney, on brief), for the plaintiff in error.

*Roland C. Woodward* (*McGuire, Woods, King, Gordon & Davis*, on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Pursuant to Code, § 58-1145, United Givers Fund of Richmond, Henrico and Chesterfield, Inc., hereinafter called UGF, filed an application in the court below praying that the land and building owned by it at 2501 Monument avenue, in the city of Richmond, and known as the Branch Memorial House, be declared exempt from real estate taxes assessed against it by the city for the years 1960 and 1961, and that the taxes paid by it for these years be refunded. The application was amended to include taxes for the years 1962 and 1963. The applicant alleged that the property is exempt from taxation pursuant to the provisions of § 183(f) of the Constitution of Virginia and Code, § 58-12. The city resisted the application. After hearing the evidence the lower court entered an order holding the property exempt from taxation and directing the refund of the taxes paid. We granted the city a writ of error. The sole issue is whether the property is exempt from taxation under these constitutional and statutory provisions.

UGF is a nonstock, nonprofit corporation organized under the laws of this State entirely for charitable purposes. Like other community chest organizations, it conducts annual campaigns to raise money for distribution to and through its various agencies. Such contributions and other gifts are its only source of income.

UGF has two classes of membership, "institutional" and "contributing." The forty-two welfare agencies which receive funds from UGF and distribute them are known as "institutional members." Persons who contribute funds to UGF are known as "contributing members" who elect a board of governors. This board determines the eligibility of the institutional members or agencies to receive money from UGF. The funds received by these welfare agencies are distributed by them for charitable purposes throughout the year.

The operations of UGF are under the direction of an executive director and secretary, assisted by a corps of clerks and employees. The salaries of these and the other operational expenses are paid out of the funds collected from contributors.

From 1954 to 1959 the Branch Memorial House, owned by Mrs. Zayde Branch Rennolds, had been used by Richmond Area Community Chest, the predecessor of UGF, as its headquarters. For this use the Community Chest paid a nominal rental equivalent to the amount of taxes assessed against the property. By a series of annual deeds, the first of which was dated December 1, 1954 and the last on December 1, 1959, Mrs. Rennolds conveyed the property to the Community Chest. Upon the advice of the City Attorney, the property was assessed for real estate taxes for the years 1960, 1961, 1962 and 1963. The annual taxes amount to $1,422.41.

The Branch Memorial House, originally designed for and used as a residence, has three floors and a basement. The executive director and other employees of UGF have their offices there. Other rooms are used for meetings of the board, numerous meetings of various committees, and for conferences incidental to the work of UGF and its forty-two agencies. The building is used as the headquarters during annual campaigns for the solicitation of contributions. From five to six thousand individuals take part in these campaigns and numerous meetings are held there in connection with such campaigns.

In addition to such use by the UGF, its members, agencies and employees, any "nonprofit" or "nonpolitical" organization is permitted to use the meeting rooms. During the year 1961, twenty-two such organizations were permitted to hold meetings in the building or make use of portions thereof. Among such permitted users were a summer theater, the Richmond Dental Society, United States Coast Guard, and Virginia Motor Sports Club. For such use these outside agencies paid no rent but only a janitor's fee for cleaning the rooms. So far as the record shows, no particular room or rooms, or portions of the building, were allotted for the use of any of these agencies.

Nor was their use limited to any particular time, except in the case of the summer theater which was permitted to use a portion of the building during the months of June and July. No fraternal organizations met there during any of the years in controversy.

The pertinent portion of § 183 of the Constitution reads thus:

"Unless otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes:

\* \* \* \* \* \* \* \* \* \*

"(f) Buildings with the land they actually occupy, and the furniture and furnishings therein, belonging to any benevolent or charitable association and used exclusively for lodge purposes or meeting rooms by such association, together with such additional adjacent land as may be necessary for the convenient use of the buildings for such purposes; \* \* \*."

The pertinent portion of Code, § 58-12, as amended, reads as follows:

"The following property shall be exempt from taxation, State and local, including inheritance taxes:

\* \* \* \* \* \* \* \* \* \*

"(5) \* \* \* property whether real or personal, owned by any community club or associations or its trustees, when said property is used or operated exclusively for general and community purposes and not for profit. (As amended by Acts 1956, ch. 478, p. 693.)

"(6) Buildings with the land they actually occupy, and the furniture and furnishings therein, belonging to any benevolent or charitable association and used exclusively for lodge purposes or meeting rooms by such association, together with such additional adjacent land as may be necessary for the convenient use of the buildings for such purposes; \* \* \* ."

It will be observed that the quoted portion of § 183(f) of the Constitution is identical with that in Code, § 58-12(6).

■ The city advances a number of reasons why it claims that the property is not exempt from taxation under these constitutional and statutory provisions. First, it says that UGF is not a "charitable association" within the meaning of § 183(f) of the Constitution and Code, § 58-12(6). The basis of this contention is the testimony of the executive director of UGF that one of its brochures had correctly stated that the organization performed "not 'charities,' but services." The implication seems to be that because UGF administers

its benevolences indirectly through its agencies and makes no direct gifts or money to, and provides no direct services for, individuals, it is not a charitable organization. We do not agree with this contention. In 84 C. J. S., Taxation, § 282, p. 543, it is aptly said: "The word 'charitable,' as used in laws providing for exemption of property used for charitable purposes, should be given a fair and reasonable interpretation, and means intended for charity. So, in order to be charitable, in this sense, an institution must be organized and conducted to perform some service of public good or welfare, * * * ."

Webster's New Collegiate Dictionary defines "charitable" as, "Liberal in benefactions to the poor; beneficent."

No reason has been advanced why these charitable services or gifts may not be made indirectly through agencies. Indeed, it is a matter of common knowledge that many charitable organizations administer their benevolences through agencies.

The brochure referred to in the testimony of the executive director shows that UGF allocates the funds collected by it to forty-two agencies, including the American Red Cross, Salvation Army, Travelers Aid Society, Children's Home Society of Virginia, Young Men's Christian Association, and others, all of which are commonly recognized as charitable organizations. Clearly, we think that in the administration of its benevolences through these agencies, UGF is a charitable association within the meaning of that term as used in the constitutional and statutory provisions.

■ Next, the city contends that the exemption of the property of benevolent or charitable associations referred to in § 183(f) of the Constitution and Code, § 58-12(6), applies only to properties of "fraternal orders" and that UGF is not that kind of association. It argues that the restricted use of the property "for lodge purposes or meeting rooms" shows such a purpose. The ready answer is that other associations than fraternal orders may use their property for the purpose of meeting rooms.

Again, the city says that at the time the Constitution was being framed in 1902, community chests and united funds were unknown, whereas the debates show an intended purpose to exempt the property of fraternal orders. It is true that during the debates much was said about the exemption of the property of fraternal orders, some of which were mentioned by name. (Debates of the Constitutional Convention, Vol. II, p. 2694 ff.) But it further appears from the debates that the members also had in mind the exemption of the property of other charitable and benevolent associations "not con-

ducted for profit." Debates of the Constitutional Convention, Vol. II, pp. 2699, 2700.

The city further relies upon a dictum in *Commonwealth* v. *Trustees Evergreen Burial Park*, 176 Va. 9, 10 S. E. 2d 495. That case involved the interpretation of § 183(c) of the Constitution exempting from taxation cemeteries and endowment funds lawfully held for their care. After quoting verbatim paragraph (c) of the section, the opinion identified certain other paragraphs in general language, thus: "(a) Applies to public property. (b) Applies to church property. * * * (f) Applies to property of fraternal orders." 176 Va. at 11, 10 S. E. 2d at 496.

What was there said with reference to paragraph (f) was, of course, not necessary to the decision of that case. While paragraph (f) *does* apply to the property of fraternal orders, as that opinion states, we did not say that its application is limited to such associations. We now hold that it is not so limited.

■ The critical issue in the present case is raised by the further contention of the city that the property is not "used exclusively for lodge purposes or meeting rooms" by UGF and its agencies within the meaning of § 183(f) of the Constitution and Code, § 58-12(6). Here the argument is that such tax exemption provisions must be strictly construed and that when this is done it will appear that the property is not used exclusively by UGF "for lodge purposes or meeting rooms," but mainly as an office building. Moreover, the city argues that many of the meetings held in this building are by organizations "totally unconnected with UGF."

Contrary to the argument of the city, beginning with *Commonwealth* v. *Lynchburg Y.M.C.A.*, 115 Va. 745, 748, 80 S. E. 589, 50 L. R. A. (N.S.) 1197 (1914), we have applied a liberal interpretation to such exemption provisions. See *City of Norfolk* v. *Board of Sup'rs of Nansemond County*, 168 Va. 606, 192 S. E. 588 (1937); *City of Richmond* v. *Richmond Memorial Hospital*, 202 Va. 86, 116 S. E. 2d 79 (1960); *Memorial Hospital Ass'n of Va.* v. *County of Wise*, 203 Va. 303, 124 S. E. 2d 216 (1962); *County of Hanover* v. *Trustees of Randolph-Macon College*, 203 Va. 613, 616, 125 S. E. 2d 812, 815 (1962); *St. Andrew's Ass'n* v. *City of Richmond*, 203 Va. 630, 125 S. E. 2d 864 (1962); *Board of Sup'rs of Wythe County* v. *Medical Group Foundation, Inc.*, 204 Va. 807, 811, 134 S. E. 2d 258, 261 (1964). See also, Horsley, Taxation, 1960-61, Annual Survey of Virginia Law, 47 Virginia Law Review 1311, 1313-16; Horsley, Taxation, 1961-62, Annual Survey of Virginia Law, 48

Virginia Law Review 1554, 1561-65; Horsley, Taxation, 1962-63; Annual Survey of Virginia Law, 49 Virginia Law Review 1662-63.

In *City of Richmond* v. *Richmond Memorial Hospital, supra,* we said that the word "exclusively," as used in such exemption provisions, "has never been considered an absolute term." 202 Va. at 91, 116 S. E. 2d at 82.

In 51 Am. Jur., Taxation, § 601, p. 584, it is said that, "To come within a provision for the exemption of property used exclusively for charitable purposes, an organization must have charity as its primary, if not sole, object." This is in accord with our rule. We have pointed out that in determining whether certain property is exempt from taxation under these constitutional and statutory provisions the controlling factor is the dominant purpose in the use of the property. As we said in *County of Hanover* v. *Trustees of Randolph-Macon College, supra,* if the use of the property "has direct reference to the purposes for which the institution was created, and tends immediately and directly to promote those purposes, it is then within the exemption provision of the Constitution, * * * ." 203 Va. at 617, 125 S. E. 2d at 815.

In the case before us the dominant purpose in the use and occupancy of the Branch Memorial House is to promote the charitable work of UGF and its agencies. As the record shows, this organization and its agencies operate through various boards and committees. Numerous meetings are held there during the annual cycle of their operations. A large amount of money is collected from numerous contributors and distributed through forty-two agencies. Obviously this requires considerable clerical work and office space which contribute directly to the purposes for which UGF was organized and is carrying out. Consequently the devotion of a portion of the building for office space and clerical help does not destroy its tax exemption

The city next contends that the building is not "exclusively used" by UGF because it permits organizations not connected therewith to hold meetings there. This is but another way of saying that such permitted use by outside civic organizations destroys the tax exemption status of the property. We do not agree.

As has been said, no rooms or portions of the building are allotted for the use of any of these outside organizations. They pay no rent and UGF derives no income or profit from their use. Their use of the property in no way interferes with, but is merely incidental to, the dominant and primary use by UGF for its benevolent and

charitable purposes. See *Memorial Hospital Ass'n of Va.* v. *County of Wise, supra,* 203 Va. at 309, 124 S. E. 2d at 220; *County of Hanover* v. *Trustees of Randolph-Macon College, supra,* 203 Va. at 617, 125 S. E. 2d at 815; *St. Andrew's Ass'n* v. *City of Richmond, supra,* 203 Va. at 637, 125 S. E. 2d at 869; *Board of Sup'rs of Wythe County* v. *Medical Group Foundation, Inc., supra,* 204 Va. at 813, 134 S. E. 2d at 262.

In the oral argument before us it was suggested on behalf of the city that because of the use of the building partly by UGF and its agencies and partly by organizations not connected therewith, the case should be remanded with direction that there be an apportionment of the assessment in accordance with the respective uses of the property under the provisions of Code, § 58-16. This section reads:

*"Assessment of building used only partly for benevolent, religious or charitable purposes.*—In assessing any building and the land it occupies which may be owned exclusively by any organization or association mentioned in § 58-12 but all of which is not used exclusively for its purposes, the assessing officers shall only assess for taxation that portion of said property subject to any such lease or otherwise a source of profit or revenue and the tax shall be computed on the basis of the ratio of the space subject to any such lease or otherwise a source of profit or revenue to the entire property; provided that when any such property is leased for portions of a year the tax shall be computed on the basis of the average use of such property for the preceding year."

Such request for an apportionment of the assessment was not presented to the lower court, is not within the assignments of error before us, and is not discussed in the briefs. But aside from this, we find that this statute is not applicable to the present situation.

In the first place, it will be observed that the statute provides for the assessment of "that portion" of the property which is "subject to" a lease or is "otherwise a source of profit or revenue" "on the basis of the ratio" which that "space" bears "to the entire property." Thus, where a portion of a building is used for benevolent, religious or charitable purposes, and a portion is "subject to" a lease or is "otherwise a source of profit or revenue," the latter is assessable for taxation. In the present case, those portions of the building which were used by the outside agencies were not leased to them by, nor were they "a source of profit or revenue" to, UGF, as contemplated by the statute.

In the next place, what is equally important, there was no separation or division of space in the building for the use of UGF and its agencies, on the one hand, and the use of the outside agencies on the other hand, as the statute contemplates. Both used the same space or rooms, from time to time, as the occasions required.

The antecedent of this statute was construed and applied in *City of Richmond* v. *Grand Lodge of Virginia*, 162 Va. 471, 174 S. E. 846. There a portion of a lodge building was leased for commercial purposes while the remainder was used exclusively for lodge purposes and meeting rooms. We pointed out that, "The language of the section in terms exempts from taxation such part or parts of the buildings and land of such institutions as are used exclusively for lodge purposes or meeting rooms, and provides only for the assessment of that part of the buildings and land that is used for other purposes." 162 Va. at 476.

This is in accord with the statement in Cooley on Taxation, 4th Ed., Vol. 2, § 688, pp. 1443, 1444, that under such statutes "*if the exempt and nonexempt parts are separable,* for purposes of valuation, the former should be held not taxable and the latter taxable." (Emphasis added.) See also, 84 C. J. S., Taxation, § 232, p. 450.

Accordingly, there is no basis for the suggestion by the city that there may be an apportionment of the assessment in accordance with the respective uses of the property under the provisions of Code, § 58-16.

Being of opinion that the lower court correctly held that this property was exempt from taxation under § 183 (f) of the Constitution and Code, § 58-12 (6), it is unnecessary that we deal with the other questions discussed in the briefs.

The order appealed from is

*Affirmed.*