## CIRCUIT COURT OF THE CITY OF LYNCHBURG

Old Time Gospel Hour, Inc.

v.

City of Lynchburg

### August 12, 1983

### By JUDGE WILLIAM W. SWEENEY

At issue is whether twenty-three parcels of land in the City of Lynchburg owned by Old Time Gospel Hour, Inc., are exempt from local real estate taxes. Originally, fifty-five properties with buildings thereon were claimed exempt but Old Time Gospel Hour, Inc. (hereafter referred to as "Old Time") now claims exemption for only twenty-three properties. The other thirty-two tracts are primarily undeveloped and rental properties.

Evidence was presented over a two-day period. Briefs have been filed, argument has been heard, and the case is mature for a decision. Efforts to effect an agreement between the parties have not succeeded.

Old Time is one of a number of ministries organized by and emanating from Thomas Road Baptist Church of Lynchburg, Virginia. The Church was founded in Lynchburg more than twenty-five years ago by Dr. Jerry Falwell. During its existence, the Church has experienced rapid growth and now has approximately twenty thousand members. The Church, the College, Old Time, and the various related ministries and organizations are all consolidated for Federal taxation purposes as Thomas Road Baptist Church

and Related Ministries. Except for some rental income, the organizations are classified as exempt by the Federal and State governments for income tax purposes. However, this classification does not exempt from local real estate taxation. See *Manassas Lodge v. County of Prince William*, 218 Va. 220, 237 S.E.2d 102 (1977).

❋ Prior to the mid-nineteen-seventies, most title to the properties in question were in the names of the various organizations which owned, occupied and used the land. Beginning around 1975 and for reasons which are not clear from the record, the fee simple legal titles to all properties in issue were transferred to and consolidated in Old Time Gospel Hour, Inc., a Virginia Corporation. The conveyances were made over a period of years and not at one time. At the time the properties were so conveyed, the City claimed that they lost their exempt status under the exemption provisions of the State Constitution and the Code of Virginia. At first, the taxes were paid, but payments were stopped and a dispute arose leading to this case. At issue are tax assessments from 1978 to date. Payments have been escrowed pending a decision in this case. It has been suggested in the briefs that one reason for the transfers of title to Old Time was to avoid the land ownership restriction imposed on churches in Virginia. Churches, through their trustees, may not own more than ten acres of land in the City. Anything over this is taxed.[1] *See* Virginia Code Section 57-12; Lynchburg City Code Section 18-46. Testimony at the hearing revealed that Old Time's directors felt it should hold title to the College property because it paid for construction of the buildings. A portion of the College property has been pledged by Old Time for construction loans at the College.

Property owned by Thomas Road Baptist Church, including the Church itself, is not involved in this case. Such property is exempt from taxation. This case deals only with the twenty-three parcels owned by Old Time Gospel Hour, Inc., as listed [in footnotes 3 through 9] of this opinion.

The facts are stipulated and not in dispute. . . .

[1] Section 57-12 allows City Councils to fix the limit of church ownership for stated purposes not to exceed fifty acres.

There is no question that the Church, the College and most if not all of the related ministries could qualify for real estate tax exempt status just as other colleges, churches, and similar associations in the City provided the tax laws were followed. The classification of most of these organizations as tax exempt entities is really not in question. The serious questions are ownership and use under the tax exemption laws. Specifically, was the tax exempt shelter lost when the ownership of land and buildings was transferred to Old Time, an affiliated but separate corporation? The City officials so decided. Old Time is the only organization seeking tax relief in this suit. It seeks relief not only for itself but for property used by the Church, the College, the Academy and a number of other agencies. In order to succeed in this suit, Old Time has the burden of proving that a tax exemption statute fits its property.

There are certain overriding principles of law applicable to this case. See 71 *Am. Jur.* 2d, "State and Local Taxation," §§ 307-391, pp. 621-704; 84 C.J.S., "Taxation," Sections 281-304, pp. 532-629. It is the general policy of the law to make all taxable property share the common burden of taxation, and any claim for exemptions asserted by the owner, other than a public governmental body, must rest upon some definite provision of law granting a tax exemption, and must be made in the advancement of the interest of the whole people. Unless otherwise provided by law, taxation is the rule and exemption is the exception and strict rules of construction apply. However, if the statutes are unambiguous they must be interpreted as written and no construction is necessary. The courts must honor the legislative intent behind the statutes and interpret the law as it was intended. The burden of proof in a tax exemption case is upon the party claiming the exemption.

In the absence of any clear expression of intent to the contrary, the exemption does not attach to or follow the property of the organization in whose favor it is given, when title passes to another. See *Wright v. Georgia R. & Pkg. Co.*, 216 U.S. 420, 30 S. Ct. 242 (1909). This is true in an outright transfer of title and in a conveyance by lease. See 23 A.L.R. 248, Superseded at 54 A.L.R.3d 402. As a general rule, exemptions from

taxation are personal and do not run with the land when the land is transferred.

In briefs, counsel have referred to the footnoted exemption provisions.[2] Some of these provisions are inapplicable. Those upon which this case turns are certain provisions of Article X, § 6, Va. Const. (1971), and Virginia Code Sections 58-12(2), 58-12(4), 58-12(5) and 58-12.24.

Art. X, § 6(a), of the 1971 Virginia Constitution now in effect states that certain property and no other shall be exempt from State and local taxation. Listed exempt is:

(2) Real estate and personal property owned and exclusively occupied or used by churches or religious bodies for religious worship or for the residences of their ministers. . . .

(4) Property owned by public libraries or by institutions of learning not conducted for profit so long as such property is primarily used for literary, scientific, or educational purposes or purposes incidental thereto. This provision may also apply to leasehold interests in such property as may be provided by general law. . . .

(6) Property used by its owners for religious, charitable, patriotic, historical, benevolent, cultural, or public park and playground purposes, as may be provided by classification or designation by a three-fourths vote of the members elected to each house of the General Assembly and subject to such restrictions and conditions as may be prescribed.

(7-f) Exemptions of property from taxation as established or authorized hereby shall be strictly construed; provided, however, that all property exempt from taxation on the effective date of this section shall continue to be exempt until otherwise provided by the General Assembly

[2] Virginia Constitution Section 183 (1902), Art. I, Section 16. Virginia Constitution (1971) Art. X, Sections 6(f), 6(a)(2), 6(a)(4), 6(a)(6), 7(f). Code of Virginia, Sections 58-12.24, 58-16, 58-12(2), (4), (5), (6), 58-14, 57-12, 13.1-204.1(d), 13.1-204.1(m).

as herein set forth. (Section took effect July 1, 1971)

Section 58-12. *What Property, real and personal, exempt from Taxation, State and Local.*

The following classes of property, exempt from State and local taxation on July one, nineteen hundred seventy-one, shall continue to be exempt from taxation, State and local, including inheritance taxes, under the rules of statutory construction applicable to this section prior to July one, nineteen hundred seventy-one. . . .

(2) Buildings with land they actually occupy, and the furniture and furnishings thereon, and endowment funds lawfully owned and held by churches or religious bodies and wholly and exclusively used for religious worship or for the residence of the minister of any church or religious body, together with the additional adjacent land reasonably necessary for the convenient use of any such building. . . .

(4) Property owned by public libraries, law libraries of local bar associations when same are used or available for use by a State court or courts or the judge or judges thereof, medical libraries of local medical associations when the same are used or available for use by State health officials, incorporated colleges or other incorporated institutions of learning. But this provision shall apply only to property primarily used for literary, scientific or educational purposes or purposes incidental thereto. It shall not apply to industrial schools which sell their products to other than their own employees or students.

(5) Real estate belonging to and actually and exclusively occupied and used by and personal property, including endowment funds, belonging to Young Men's Christian Associations and other similar religious associations, including religious mission boards and associations, orphan or other asylums, reformatories, hospitals

and nunneries, conducted not for profit but exclusively as charities (which shall be deemed to include hospitals operated by non-stock corporations not organized or conducted for pecuniary profit but which may charge persons able to pay in whole or in part for their care and treatment), and parks or playgrounds held by trustees for the perpetual use of the general public.

Section 58-12.24, Code of Virginia as amended:

Property owned by any church, religious association or denomination or its trustees or duly designated ecclesiastical officer, and used exclusively on a nonprofit basis for charitable, religious or educational purposes is hereby designated and classified as religious and charitable in the meaning of Article X Section 6(a)(6) of the Constitution of Virginia. Property so owned and used is hereby determined to be exempt from taxation. (1974)

Most of the applicable constitutional provisions were reenacted in substantially the same form in Virginia Code Section 58-12. By eliminating unnecessary language, the exemption laws applicable to this case can be simplified. In order for Old Time to qualify its property as exempt, it must fit itself into one of the following exempt provisions of Section 58-12:

(2) Buildings with land they actually occupy lawfully owned and held by churches or religious bodies and wholly and exclusively used for religious worship or for the residence of the minister of any church or religious body. (deletions made)

(4) Property owned by incorporated colleges or other incorporated institutions of learning. But this provision shall apply only to property primarily used for literary, scientific or educational purposes or purposes incidental thereto. (deletions made)

(5) Real estate belonging to and actually and exclusively occupied and used by Young Men's Christian Associations and other similar religious associations conducted not for profit but exclusively as charities. (deletions made)

Section 58-12.24:

Property owned by any church, religious association or denomination or its trustees or duly designated ecclesiastical officer, and used exclusively on a non profit basis for charitable, religious or educational purposes is hereby designated and classified as religious and charitable in the meaning of Article X, Section 6(a)(6) of the Constitution of Virginia. Property so owned and used is hereby determined to be exempt from taxation.

The nature and purposes of Old Time Gospel Hour, Inc. is a vital issue. It is necessarily a determination of fact to be made from the record. Before deciding whether land and buildings owned by Old Time qualify for exemption, Old Time must be classified and described.

Old Time's original 1967 charter states that it was formed:

(a) To engage in and conduct charitable, religious or educational activities and programs in the City of Lynchburg, Virginia, and any other area of the United States of America;

(b) To manage, conduct, plan and promote religious radio or television programs, and to deal in and promulgate through any and all types of communications media, religious programs, articles, books, magazines, newspapers, periodicals, motion picture films, slides, art, visual aids, and ideas and services of like nature thereto. . . .

(d) To make public solicitation or appeals for contributions, bequests, endowments, gifts, and subscriptions, both in money or in property in furtherance of the activities and programs of other non-stock and non-profit religious,

educational and charitable corporations; and
. . . .

(f) Any provision in these Articles of Incorporation to the contrary notwithstanding, this corporation is organized and shall at all times be operated exclusively for religious and educational purposes. . . . .

Old Time amended its charter in 1975 as follows:

The purposes for which this corporation is formed are as follows:

(1) To promote the spread of religious ideas and ideals of Christianity through the use of any and all communication media; and

(2) To proselytize the general public to adopt Christian beliefs and practices through the use of any and all communication and media. In order solely to accomplish the two foregoing purposes the corporation is formed:

(a) To engage in and conduct charitable, religious or educational activities and programs in the City of Lynchburg, Virginia, and any other area of the United States of America;

(b) To create, print and distribute articles, books, magazines, newspapers, periodicals, motion pictures, slides, art and visual aids;

(c) To organize, manage, and conduct radio and television programs, worldwide. . . .

(f) To make public solicitation or appeals for contributions, bequests, endowments, gifts, and subscriptions, both in money or in property in furtherance of the activities of the Old Time Gospel Hour and other non-stock and non-profit religious, educational and charitable corporations. . . .

It is apparent that the 1975 charter amendment applicable in this case restricted and more sharply defined the purposes of the corporation. When read together, the two purposes stated make it clear that Old Time was formed to promote the spread of religious ideas through the use of communication media and to urge the public to adopt Christian beliefs and practices through media

communication. The other broader purposes including charitable, religious and educational activities are "solely to accomplish the two foregoing purposes. . . ."

At page 16 of the transcript, George Rogers, chief financial officer and treasurer of Thomas Road Baptist Church explained that Old Time and the various ministries were extensions of Thomas Road Baptist Church. In other words, the church was the hub of the wheel in the organizational chart and the various ministries were the spokes. It is significant that the Church and not Old Time is the central body from which the ministries flow. The College, the Academy, the homes and other services are presented as ministries of the Church, not of Old Time. In describing Old Time, Mr. Rogers testified:

> The Old-Time Gospel Hour is a separate corporation, and the basic purpose of the Old-Time Gospel Hour is to televise the Sunday services at Thomas Road Baptist Church and air that program on 392 TV stations on Sundays or weekends; some Saturdays, and also a taped program goes on the air to some 500 radio stations.
>
> Now that is basically the function of the Old-Time Gospel Hour plus the direct mail in fund-raising operations and in so doing they fund functions of the church such as Inner City, Elim Home. They fund--actually fund part of the College activities. They fund part of the Academy. They fund the Seminary. The Institute is self-supporting. They fund the Institute of Biblical Studies.
>
> In the Old-Time Gospel Hour, they have expenditures of approximately $41 million. This is based on the audited report from Coopers & Lybrand dated June 30, 1982.

Based upon the evidence, I find as a fact that Old Time Gospel Hour is a non-stock, non-profit, corporation formed primarily to promote the spread of Christian beliefs and ideas through its television, broadcast and print facilities and to generate funds to support itself, Thomas Road Baptist Church, and ministries of the Church.

*Interpretation of Tax Exemption Provisions*

Section 6(f), Article X, of the 1971 Constitution provides for a strict construction of exemptions but further provides that all property exempt from taxation on July 1, 1971, shall continue to be exempt until otherwise provided. In the *Report of the Commissioners on Constitutional Revision*, the Commission stated:

> The Commission believes that in light of the apparent inclination of the General Assembly to expand the statutory definition of the constitutional exemptions, a strict construction of the Constitution is desirable. This recommendation is in accord with the general rule that tax exemptions should be strictly construed. . . . A provision has been added . . . to protect existing exemptions from the strict construction requirements. *Report* at 306

In commenting on the so-called "grandfather's clause," the Virginia Supreme Court said in *Manassas Lodge* v. *Prince William*, 218 Va. 220, 237 S.E.2d 102 (1977):

> Section 6(f) implemented by the 1972 Amendment to Virginia Code Section 58-12, retains a rule of liberal construction to apply retroactively to determine whether certain property was exempt from taxation on July 1, 1971, and, therefore, should continue to be exempted.
> 218 Va. 220 at 223.

I think Section 6(f) means what it says, property exempt before the new Constitution was adopted should remain exempt. The classification of organizations existing prior to July 1, 1971, should be tested by liberal exemption rules. Likewise, property which such organization held prior to July 1, 1971, should be tested by liberal rules. In other words, the status of such exempt organizations and the property they owned should not be affected by the strict construction rule built into the new Constitution. However, additional or new property acquired after July 1, 1971, should be tested under the strict rule

of construction required by the Constitution and approved by the voters.

Applying this interpretation to the case at bar, Old Time is entitled to a liberal construction as to whether it qualifies as a tax exempt organization since it was formed in 1969. Any property held by it as of July 1, 1971, would likewise be entitled to liberal construction. Property acquired by it after 1971 would be tested by strict construction rules. By the same reasoning, tax exemption provisions carried over into Section 58-12 from the old Constitution should be tested by liberal construction rules. New provisions in Section 58-12 should be tested by strict rules.

Rules of construction should be applied only when needed, however. As the Virginia Supreme Court said in *Hollywood Cemetery Co.* v. *Com.*, 123 Va. 106, 96 S.E. 207 (1918):

> [W]hen the words of Constitutions and of statutes are unambiguous and have a clear and definite meaning, indicating their purpose, it is well settled that courts are not permitted to interpret that which needs no interpretation, and that general rules for the construction of statutes of doubtful meaning have no application. . . . 123 Va. 106 at 110. *See also* the recently decided case of *Ambrogi* v. *Koontz*, 224 Va. 381 (1982).

While the question of construction is an issue in this case, in my opinion, it is not a dispositive issue since the meaning and intent of the statutes is clear enough for a ruling.

### Application of Statutes to Old Time and the Property it Owns

While it is true that no two cases are exactly alike, and that each tax exemption case should be treated on its own facts and merits, there is some precedent for organizations similar to Old Time seeking tax exemption.

In a 1982 opinion, the Attorney General of Virginia responded to a question from the Commissioner of the Revenue for the City of Virginia Beach as to whether 390

acres of land owned by Christian Broadcasting Network, Inc. (C.B.N.) or any portion thereof, was exempt from local real estate taxation. C.B.N. was exempt from Federal and State income taxation. In ruling that the property was not exempt under either Section 58-12(5) or Section 58-12.24, the Attorney General said that C.B.N. was religious in nature and purpose but not "exclusively charitable" as required by Section 58-12(5). In denying exemption under Section 58-12.24, the ruling held that C.B.N. was not a church, religious association or denomination as intended by that section and was further disqualified because the section had no application to corporations as distinguished from associations or societies. *Reports of the Attorney General* (1981-1982).

In a July, 1982, opinion, the present Attorney General opined that Multi-Media Evangelism, Inc., was not exempt under Section 58-12.24 for the reasons given in the C.B.N. opinion. Multi-Media Evangelism, Inc., was a Virginia non-profit corporation. Its charter stated that it was organized "to foster, promote and encourage the proclamation of the Christian Gospel in all parts of the world by all methods, means and media possible. . . and to promote and finance the work of any and all Christian ministers in a proclamation ministry in the churches of the United States and foreign lands."

Non-exempt rulings were also made by the Attorney General as to property owned by Word of Faith Hour Broadcast, Inc. (December 31, 1956), and Christian Enterprises Incorporated (August 10, 1972), see *Reports of the Attorney General*.

In the rulings cited, the corporations seeking tax exemption were seeking it for land which they owned and used. The Old Time claim is one step removed and thus a weaker factual claim because Old Time is seeking exemption not just for land used in its operation but for land and buildings used by other ministries as well.

Moving specifically to the applicable sections of 58-12 which reflect the Constitutional provisions, Section 58-12(2) exempts buildings with land they actually occupy lawfully owned and held by churches or religious bodies and wholly and exclusively used for religious worship or for the residence of the ministers. It is clear that this section applies to churches. It is also clear that ownership and occupancy must concur. The church or religious

body must both own and occupy the land if it is to be exempt under this section. The word "owned" means legal title to the property. If there was ever any question about that, the doubt was removed in *Board of Supervisors v. Medical Group Foundation*, 204 Va. 807, 134 S.E.2d 258 (1964), where the Supreme Court in construing the language of Section 58-12(5) said:

> The words "belonging to" are susceptible of two meanings, depending upon the context in which they are used. They may be used as a synonym for "owned by" and as such mean absolute ownership. . . . On the other hand, "belonging to" may mean less than an absolute and unqualified title, such as the absolute right of use.

Section 58-12(4) clearly applies to schools and colleges. By express terms the property to be claimed exempt must be owned by the college or school. In addition, the property must be primarily used for literary, scientific or educational purposes.

Section 58-12(5) exempts property belonging to and exclusively occupied and used by Young Men's Christian Associations and similar religious associations operated exclusively as charities.

Section 58-12.24 was enacted after 1971 and was not carried over from the Old Constitution or statutes. Both sides agree that this Section must be strictly construed. The Section exempts property owned by any church, religious association or denomination used exclusively for charitable, religious or educational purposes. The intent of the Legislature in enacting this statute seemed to have been to define the words "religious and charitable" within the meaning of Article X, § 6(a)(6), of the Constitution. This constitutional provision did not exempt any property but gave the General Assembly authority to declare certain classes of property exempt. If the purpose of Section 58-12.24 was to clarify language in the Constitution, it did not create any new exemptions. Under this interpretation, a three-fourths vote of the General Assembly would still be necessary.

Of the twenty-three parcels of land claimed exempt,

six are used by Liberty Baptist College,[3] seven by Thomas Road Baptist Church and its ministries,[4] one by Lynchburg Christian Academy,[5] two by Old time Gospel Hour,[6] four by the College, the Academy and the Church jointly,[7] two by Dr. Falwell,[8] and one parcel is used jointly by Old Time and the Church.[9] Descriptions of the properties, current use, and current tax assessments are shown in the footnotes.

Old Time claims tax exemption for Dr. Falwell's residence under Section 58-12(2). Even under a liberal construction of this section, I do not think the Legislature intended that a separate ministry of a church could claim a parsonage exemption. Dr. Falwell is the minister of Thomas Road Baptist Church. If the parsonage property

[3] 616 Thomas Rd, $208.88 (housing for Sounds of Liberty leaders), 630 Thomas Rd, $166.00 (offices of Liberty Baptist Singers), Counseling Center on LBC campus, $1,788.64, LBC College Campus, $110,223.68 (160 acres), LBC, $135.52 (future dormitory sites), 712-720 Church Street, $2,889.60 (former dormitories for LBC).

[4] 618 Thomas Road, $208.52 (headquarters for Soul Winning Ministry), 105 Perrymont Avenue, $79.52 (housing for visiting ministers), 124 Perrymont Avenue, $350.00 (headquarters for Senior Saints' Ministry), 527 Church Street, $1,339.20 (Family Center and Inter-City Youth Ministry), 305 Smythe Street, $175.28 (Parking lot for 527 Church Street), Carroll Avenue property, $3,173.96 (Old Cotton Mill, portions used for storage), Eldon Street property, $419.00 (Sav-A-Baby Ministry).

[5] Crescent Road property, $11.20 (Playground for L.C.A.).

[6] 2216 Langhorne Road, $18,256.00 (headquarters of Old Time, 65% claimed exempt); Langhorne Road property, $2,304.00 (Parking lot for Old Time).

[7] 715 Thomas Road, $668.00 (Service center for vehicles used by LBC, the Church & LCA), 723-727 Jefferson Street, $1,788.64 (Storage for Old Time, the Church & LBC), Two athletic fields, $1,788.64 & $1,251.04 (Used by LCA, LBC and the Church).

[8] Property between Pawnee Dr. and Long Meadows Dr., $2,390.12 (6.55 acres used as church parsonage), Strip of land on Long Meadows Drive, $21.84 (access to parsonage).

[9] 114-120 Perrymont Avenue, $1,454.88 (Storage and maintenance used by Old Time and the Church).

were in the name of this Church, it would be exempt, but the intent of the statute was not to grant exemption both to a main church and to a ministry of a church. In a sense, Dr. Falwell is a minister for Old Time since it presents his sermons, but under circumstances such as this, to grant exemption for the parsonage to either the Church or Old Time would be to change the purpose of the statute and enlarge its meaning. Certainly Old Time could be classified as a religious body or organization, but not all religious bodies are churches as that term is used in tax statutes.

Section 58-12(4) applies to schools and colleges. I find as a fact that Old Time is not a school or college within the meaning of this section. It was simply not formed as an "incorporated college or other incorporated institution of learning." To be exempt the property must be both owned and used as a college by the party seeking exemption. "Educational purposes" presupposes the existence of a faculty, a student body and prescribed courses of study. Old Time itself has none of these. Furthermore, the College cannot make a claim to exemption in its own right by virtue of its lease since it is not a party to this case. Old Time owns all the property in issue, the properties are assessed in its name, and it is the only party seeking tax relief here.

Old Time relies principally on 58-12(5) for its tax exemption claim. This section, as first enacted, was declared unconstitutionally broad by the Attorney General. It was amended in 1974.

By express language in the statute, Old Time could not qualify its property as exempt under this provision unless it exclusively occupied and used the property in question, and unless Old Time was conducted exclusively as a charity. In addition, the legislative intent behind this statute was to exempt property owned by religious associations. "similar to Young Men's Christian Associations . . . ."

Old Times's operations do not meet the requirements of this statute for several reasons. Except for the parcels used in its operations, it does not exclusively occupy and use the other parcels. The other ministries are independent and autonomous. They are not ministries of Old Time. They are ministries of Thomas Road Baptist Church. Old time is not similar to a Y.M.C.A. in classification. It

is an arm of a church. It is a religious organization with charitable purposes, but it is not operated exclusively as a charity as the statute requires. The word "exclusively" is not an absolute term, but the organization must have public charity as its primary, if not sole, object. *City of Richmond* v. *United Givers Fund*, 205 Va. 432, 137 S.E.2d 876 (1964). There is an obvious difference in purpose between organizations such as the United Givers Fund, Salvation Army and Old Time Gospel Hour. Some of the Thomas Road Baptist Church ministries such as The Family Center might well be classified as exclusively charitable but this would not be true for Old Time.

Section 58-12.24 must be strictly construed. Assuming that it creates new exemptions not in the pre-1971 law, it is directed at churches and similar bodies. While all churches are religious organizations, it does not follow that all religious organizations are churches. Old Time is not a church in the sense intended in this statute. The Kentucky Court of Appeals has held that an incorporated evangelistic association was not a "religious society" for purposes of tax exemption. See *Mordecai Ham Evangelistic Assoc.* v. *Matthews*, 300 Ky. 402, 189 S.W.2d 524 (1945).

Additionally, if Old Time's property were declared exempt under this section, Old Time would be immediately in violation of the State and City Code provisions placing limits on how much land churches and similar bodies may own. As a church, all of its real estate over ten acres would be taxable. For reasons stated, I rule that Section 58-12.24 is not applicable to Old Time and the land it owns.[10]

The cases principally relied upon by Old Time are distinguishable. Most were decided under pre-1971 liberal construction rules. *City of Richmond* v. *United Givers Fund*, 205 Va. 432, 137 S.E.2d 876 (1964), involved the question of whether property owned and used by United Givers Fund lost its exemption because of free use of its building by other agencies. The Court held that this did not affect the charitable purpose of the organization. Unlike Old Time, United Givers both owned and occupied its property.

---

[10] See also Rulings of the Attorney General that this section has no application to corporations.

*Commonwealth* v. *Lynchburg YMCA*, 115 Va. 745, 80 S.E. 589 (1914), upheld the tax exemption status of this organization even though some rooms in the building were rented. It was held that the dominant purpose of the Y.M.C.A. had not changed. The "dominant purpose" rule has no application here.

In *St. Andrews Ass'n.* v. *City of Richmond*, 203 Va. 630, 125 S.E.2d 864 (1962), the Court held that tax exemption was not lost when one charitable association permitted another charitable association to use the building in exchange for maintaining it. In the present case, the various ministries of Thomas Road Baptist Church which occupy and use the land in question are not agents of Old Time. Many of them are separate corporations managed by their own Boards of Directors. Old Time funds them but does not direct them in their day to day activities. Old Time is an arm of a larger church.

*Board of Supervisors* v. *Medical Group Foundation, Inc.*, 204 Va. 807, 134 S.E.2d 258 (1964), held that land owned by a Medical Foundation and leased to a Hospital Corporation for purposes which served both groups was tax exempt. The exemption was granted under a statute using the words "belonging to" rather than "owned by." The case is factually distinguishable.

### Conclusion

I find that both the City and Old Time have acted in good faith. They could not resolve their differences out of court because the tax issue was a legal issue. Therefore, they submitted their differences to this court for a decision. There is no disagreement as to the facts. Each side has a right of appeal.

All property is taxable unless specifically excepted by law. Since 1971, tax laws have been strictly construed in this State. For Old Time to successfully claim tax exemption for property it owns but does not occupy and use, it must prove that it is a church or similar organization, a college or institution of learning, or an exclusively charitable association similar to a Y.M.C.A. In my opinion, it is none of these. Even if it were held to be a church or similar organization, such ruling would be of little benefit to Old Time because all holdings over ten acres would be immediately taxable. To stretch

the law in this case would be to set dangerous precedents for other tax exemption cases. The church limitation laws would lose their meaning if they could be circumvented. I therefore rule that none of the twenty-three parcels are tax exempt except those parcels actually used by Old time in whole or in part in its ministry (see footnotes 3 through 9).

There are several recourses open to Old Time and the Church. Since Thomas Road Baptist Church and its ministries create a unique tax situation, they may wish to petition the General Assembly for special tax exempt status under Article X, Section 6(a)(6), of the Constitution. I feel that a strong and appealing case under this section could be made for exempting all the property. Another approach would be to reconvey the College property to the College where it would be tax exempt. This property represents the major item in this case. Furthermore, placing more property in the name of the Church would make the property tax exempt if the acreage limit is not exceeded.

Counsel for the City shall prepare a decree in accordance with this opinion.