Present:  All the Justices

CHILDREN, INCORPORATED

v.    Record No. 950441    OPINION BY JUSTICE ELIZABETH B. LACY
                                  January 12, 1996
CITY OF RICHMOND

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Randall G. Johnson, Judge

Children, Incorporated (Children) filed an application pursuant to Code § 58.1-3984 for relief from tax assessments levied by the City of Richmond for tax years 1989 through 1993. Children, a charitable organization, challenged assessments which taxed personal property it owned and used in its charitable activities.  Children asserted that it was entitled to a tax exemption under the second clause of Article X, Section 6(f), of the 1971 Constitution of Virginia, generally referred to as the "grandfather clause."  Based on stipulated facts and argument of counsel, the trial court determined that personal property owned by Children on July 1, 1971, the effective date of the 1971 Constitution, was exempt from taxation under the grandfather clause, but that personal property obtained after that date was not exempt.  Children appealed, assigning error to that portion of the trial court's judgment holding that personal property acquired after 1971 was not exempt from taxation.  Because we find that Children met its burden to show that personal property it acquired after July 1, 1971, was entitled to a tax exemption, we will reverse the judgment of the trial court.

The grandfather clause in Article X, Section 6(f), of the

1971 Constitution of Virginia provides that
> all property exempt from taxation on the effective date of this section shall continue to be exempt until otherwise provided by the General Assembly as herein set forth.

Children claims that on the effective date of the 1971 Constitution it was entitled to a tax exemption under § 183(f) of the 1902 Constitution of Virginia and former Code § 58-12(6) for the personal property it owned and used for its charitable purposes.[1]  The grandfather clause preserved this exemption, Children argues, for the personal property it acquired after July 1, 1971, and presently uses in its charitable activities.[2]

---

[1]Section 183(f) of the 1902 Constitution provided a tax exemption for

> [b]uildings with the land they actually occupy, and the furniture and furnishings therein belonging to any benevolent or charitable association and used exclusively for lodge purposes or meeting rooms by such association, together with such additional adjacent land as may be necessary for the convenient use of the buildings for such purposes.

This subsection along with the other subsections of § 183 were codified in former Code § 58-12.  It now appears as paragraph (A)(7) of Code § 58.1-3606.

[2]Precisely which exemptions were preserved by the grandfather clause has been the subject of considerable debate.  The primary dispute centered on whether the word "property" as used in the clause meant the continuation of a tax exemption for the classes of property contained in § 183 of the 1902 Constitution or whether it meant preservation of a tax exemption for only a specific piece of property which was treated as exempt under § 183 on July 1, 1971.  Various interpretations and applications of the clause and its corresponding legislation have been advanced by commentators, legislative reports, and opinions of Attorneys General.  See Note, Property Tax Exemptions for Charitable, Benevolent, and Religious Organizations in Virginia, 71 Va. L. Rev. 601 (1985), for an extensive description and discussion of the history of

The exemptions preserved by that clause, however, continued only "until otherwise provided by the General Assembly." Va. Const. art. X, § 6(f). As pointed out and relied on by the parties here, the General Assembly has enacted and amended the relevant tax exemption statutes over the years. Thus, we must first determine whether the grandfather clause has been superseded by legislation and, if so, how such legislation affects the tax exemption sought by Children in this case.

The General Assembly amended Code § 58.1-3606 and its predecessors in 1972, 1973, 1974, 1984, and 1985. Acts 1972, ch. 667 at 887; Acts 1973, ch. 438 at 641; Acts 1974, ch. 469 at 907; Acts 1984, ch. 675 at 1406; Acts 1985, ch. 495 at 801. These amendments basically continued the codification of the list of property classes exempt from taxation under § 183 of the 1902 Constitution of Virginia.

The legislative changes relevant to our inquiry affected that portion of the statute preceding the list of exempt property classes. From 1972 through 1984, Code § 58.1-3606 began as follows:

> The following classes of real and personal property, which were exempt from taxation on July 1, 1971, shall continue to be exempt from taxation under the rules of statutory construction applicable to exempt property prior to such date: . . . .

This language perpetuated exemptions available under the 1902

the grandfather clause and relevant legislative reports, cases, and legislation.

Constitution and continued by the grandfather clause.  As indicated previously, the specific contours of the exemption were subject to debate; nevertheless, there was agreement that the exemptions were available only to organizations that existed on July 1, 1971.  Westminster-Canterbury v. City of Virginia Beach, 238 Va. 493, 501, 385 S.E.2d 561, 565 (1989); 1983-84 Op. Att'y Gen. 362-63; 1977-78 Op. Att'y Gen. 416.

In 1985, the General Assembly amended that portion of the section preceding the list of exempt property classes to read as follows:

A.    Pursuant to the authority granted in Article X, Section 6(a)(6) of the Constitution of Virginia to exempt property from taxation by classification, the following classes of real and personal property shall be exempt from taxation: . . . .

Code § 58.1-3606(A).  This amendment was significant because it stated a specific legislative intent to exercise the authority under Article X, Section 6(a)(6) to create new property exemptions by classification.[3]  The exemptions under this section were no longer limited to any specific date.  Property qualifying under one of the listed classes "shall be exempt from taxation" regardless of when the organization seeking the exemption was created or the property acquired.  See

_____

[3]Article X, Section 6(a)(6) authorizes the General Assembly to exempt by classification "[p]roperty used by its owner for religious, charitable, patriotic, historical, benevolent, cultural, or public park and playground purposes."  The exemption must be passed by three-fourths vote of the members of each house.

- 4 -

<u>Westminster-Canterbury</u>, 238 Va. at 498-502, 385 S.E.2d at 563-66 (applying Code § 58.1-3606(A)(5) to post-1971 organization). Thus, the 1985 amendment expanded or created new property tax exemptions.

The amendment creating the new exemptions did not alter the list of exempt classes of property; however, it did alter the standard for construing those exempted classes. Under both the 1902 Constitution and the grandfather clause, the exemptions were liberally construed. The 1971 Constitution, however, required that tax exemptions enacted under Article X, Section 6(a)(6) be strictly construed. Va. Const. art. X, § 6(f). A major effect of the 1985 amendments to Code § 58.1-3606, therefore, was the imposition of a rule of strict construction upon the tax exemption classifications. <u>See</u> <u>Westminster-Canterbury</u>, 238 Va. at 501, 385 S.E.2d at 565.

This new canon of construction had the potential to seriously disrupt the exemptions granted to and enjoyed by numerous organizations under the 1902 Constitution and the grandfather clause. For example, under a liberal construction, an organization qualified as "charitable" if it was "organized and conducted to perform some service of public good or welfare." <u>City of Richmond v. United Givers Fund</u>, 205 Va. 432, 436, 137 S.E.2d 876, 879 (1964). Property was considered to be used "exclusively" for the charity's purposes if charity was the <u>dominant</u> use of the property. <u>Id.</u> at 438, 137 S.E.2d at

880.  A strict construction of these terms could result in a

different conclusion.  See, e.g., Westminster-Canterbury, 238

Va. at 501, 385 S.E.2d at 565 (applying strict construction of

"exclusively" as used in Code § 58.1-3606(A)(5)).

The General Assembly addressed this potential problem by

adding subsection B to Code § 58.1-3606.  That subsection

provides:

> B.    Property, belonging in one of the classes listed
> in subsection A of this section, which was exempt
> from taxation on July 1, 1971, shall continue to be
> exempt from taxation under the rules of statutory
> construction applicable to exempt property prior to
> such date.

Thus, the rule allowing liberal construction of exemptions was

preserved under certain circumstances.[4]  Those circumstances

are plainly and unambiguously set out, avoiding the uncertainty

generated by the word "property" in the grandfather clause.

Property, as used in subsection B, belongs "to a class"; it

does not mean "a class of property."  Thus, the word property

refers to a specific piece of real or personal property.

Subsection B limits the use of liberal rules of

construction to circumstances involving a specific piece of

property that (i) belongs to one of the classes described in

subsection A, and (ii) was exempt from taxation on July 1,

---

[4]Applying a liberal construction in this instance does not
conflict with the constitutional requirement of strict
construction.  Subsection B does not create any new exemptions
under the 1971 Constitution, but merely continues pre-1971
exemptions preserved by the grandfather clause.

1971.  Requiring a piece of property to be exempt on a specific date presumes that the property existed on that date.  And, because tax exemptions do not run with property, see Code § 58.1-3601, an organization must have owned the piece of property on July 1, 1971, to qualify for a tax exemption under the liberal construction allowed by subsection B.

In summary, the 1985 amendments to Code § 58.1-3606 under the authority of Article X, Section 6(f) created exemptions by classification for classes of property owned and used by certain benevolent, charitable, and other organizations.  The exemptions must be strictly construed, unless subsection B is applicable to the claimed exemption.  In that case, liberal rules of construction may be applied.

Subsection B is the legislative disposition anticipated in the grandfather clause, which "otherwise provided" for the exemptions initially addressed and preserved by the grandfather clause.  Thus, while the exemption Children seeks in this case has its historical roots in the grandfather clause and § 183(f) of the 1902 Constitution, it is governed by the current provisions of Code § 58.1-3606.

Applying these principles to the present case, we conclude that, because the specific personal property at issue here did not exist and therefore could not have been exempt from taxation on July 1, 1971, the tax exemption sought by Children is not entitled to liberal rules of statutory construction

under subsection B.  Nevertheless, Children may be entitled to an exemption for that property if the property belongs to one of the classes in subsection A, applying a strict construction.

As mentioned earlier, Children's exemption is based on the class of property currently contained in paragraph 7 of Code § 58.1-3606(A).  That paragraph provides a tax exemption for the following:

> Buildings with the land they actually occupy, and the furniture and furnishings therein belonging to any benevolent or charitable organization and used by it exclusively for lodge purposes or meeting rooms . . . .

The parties in this case have stipulated that Children is a charitable organization and that its personal property "has continuously been used since it was acquired as a part of [Children's] charitable operation, . . . [that] the tangible personalty is used in the various facets of the charitable operation . . . . [and that it] is used for meetings and conferences" of the organization with staff, donors, and prospective donors.  There is no evidence that the personal property was used for any purpose other than Children's charitable purposes.  Therefore, we conclude that Children met its burden of establishing that it was entitled to a tax exemption for personal property acquired after July 1, 1971, which it used exclusively for its charitable purposes pursuant to Code § 58.1-3606(A)(7).

Accordingly, we will reverse that part of the judgment of

the trial court holding that personal property acquired after July 1, 1971, was not exempt from property tax by the City of Richmond.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and final judgment.</u>